COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Humphreys
Argued at Richmond, Virginia


JOHNNY R. HUBBARD
                                                              OPINION BY
v.        Record No. 0217-11-1                   JUDGE ROBERT J. HUMPHREYS
                                                              MAY 15, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

Von L. Piersall, III, for appellant.

Karen Misbach, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Johnny R. Hubbard ("Hubbard") entered a guilty plea for first-degree murder in violation

of Code § 18.2-32 which the Circuit Court of the City of Portsmouth ("circuit court") accepted.

Prior to sentencing, Hubbard filed a motion to withdraw his guilty plea, and the circuit court

denied the motion.  On appeal, Hubbard argues that the circuit court erred in denying his motion

to withdraw his guilty plea.

I.  Background

On September 23, 2010, Hubbard appeared before the circuit court and pled guilty to

first-degree murder in violation of Code § 18.2-32.  His guilty plea was made pursuant to an

agreement with the Commonwealth in which Hubbard agreed to plead guilty to first-degree

murder in exchange for a cap on his active sentence of sixty-seven years and five months.

Before accepting the plea, the circuit court engaged in the standard colloquy in which Hubbard

stated that he understood the charges and the maximum penalties he was facing, that his plea was

given freely and voluntarily, that he talked with his attorneys and gave them all the information

that he knew about his case, that he discussed the case fully and thoroughly with his attorneys, that his attorneys did a good job, and that he was completely satisfied with their services.

Thereafter, the Commonwealth proffered the evidence that it would have presented had it tried the case that day. The evidence included a signed statement given by Hubbard to a police officer. In the statement, Hubbard wrote that he was married to Beverly G. Hubbard (the "victim"), although they were separated. The Commonwealth's proffered evidence also was that the victim had a restraining order against him; however, they continued to see each other off and on. On April 8, 2010, Hubbard and the victim went shopping during the day and then returned to her house in the evening. Hubbard's statement then described how the events of that evening unfolded:

> I started rubbing her feet. I am a very sexually active person and when I rub her feet it usually leads to something more. She told me no she did not want to have sex. I said fine and that's when she called me a sick sex Addict [sic]. We started arguing and fighting. I grabbed a knife and stabbed her in the neck. She grabbed hold of the knife and I pulled it out of her hands cutting them. She was still fighting and she fell on the floor. She told me she wanted to get back in her bed if she was going to die. I put her back in the bed & ask [sic] her if she wanted a tylenol because her hands were hurting. She rolled over and reached for the telephone and she fell off the bed. I took the phone and ripped the battery out. There was blood everywhere. I wiped the blood out of her eyes. She asked me Why? She asked me to help her. I told her God was on the way. I stayed with her until she stopped breathing. It took her about 10 minutes to die.

Subsequently, Hubbard showered, fed the dogs, and returned to his own home. The next day, he drove to Nags Head and sat on the beach and then drove to the victim's parents' graves in Suffolk to talk to them. The following morning, he woke up and drove to a Dairy Queen, where he left the victim's identification and a note on a toilet stating that the person indicated on the identification had been murdered. Hubbard then left the Dairy Queen and drove until he saw a

police officer. He approached the officer, waited for the officer to finish writing a traffic ticket, and then admitted to stabbing his "baby."

The Commonwealth would have then elicited the testimony of the officer to whom Hubbard turned himself in and the officer to whom Hubbard gave the signed statement. The Commonwealth then presented the victim's ID and the note which was found with it in a Dairy Queen stating, "Call 911 and let someone know this woman has been murdered," photographs of the victim showing the condition she was found in at the crime scene, a knife recovered at the scene, and the victim's autopsy report. The photographs and autopsy report showed that the victim suffered at least five wounds to the left side of her neck, three or more wounds to the left side of her back, three wounds to her left arm, two wounds to her right arm, ten wounds on the right hand, five wounds on the left hand, and various other wounds and bruises.

Based upon Hubbard's guilty plea and the proffered evidence, the trial court found Hubbard guilty of murder in the first degree and his sentencing was scheduled for December 7, 2010.

On November 19, 2010, Hubbard filed a motion to withdraw his guilty plea. At the scheduled hearing on the motion, both of Hubbard's attorneys made a motion to withdraw as counsel, which the circuit court granted.[1] The circuit court then assigned Hubbard new counsel and postponed the hearing on Hubbard's motion to withdraw his guilty plea. The circuit court held the hearing on that motion on December 7, 2010. Hubbard testified at the hearing that he wanted to withdraw his guilty plea, because he did not act with premeditation. Hubbard explained that he had only pled guilty due to pressure from his previous attorneys:

---

[1] At the time, Hubbard was represented by two attorneys. One withdrew because Hubbard filed a complaint against her with the Virginia State Bar, and she felt that she could not proceed as his counsel given the conflict of interest. It is unclear from the record if Hubbard filed a complaint against his other attorney, although it is clear that she subsequently withdrew as well.

My old attorneys; the way they was pushing me, I mean I was standing out there in the hallway, right out there in front of the bullpen, and the deputy come up to the door and said, "Look, they're waiting on you," and I had already told my attorney, I said, "I don't want to do this because it's not premeditation," and she said, "Well, you need to do something. You're not going to be able to beat it, but we've got to go," so I didn't know what else to do, so I did it. Out of sheer – I mean, I was pushed I felt like.

However, Hubbard admitted that each of his previous attorneys visited him a couple of times each and that they had discussed both first and second-degree murder with him.

The circuit court denied the motion, stating,

Well the Court is of the opinion that this is a case where we have two experienced attorneys, two attorneys who the Court has great faith in as far as their ability and their integrity. I just believe and the questionnaire bears out that he was properly informed and came in knowing; and a week before his presentence report – I guess he didn't like the results of that – during the time he waited it dawns on him that he is not happy with the whole situation.

I think it's clearly a case of his not wanting to face the music, quite frankly, and this Court is not of the opinion that anything has been shown that would require or justify a withdrawal of his guilty plea.

At Hubbard's sentencing hearing on January 31, 2011, Hubbard renewed his motion to withdraw his guilty plea. This time, Hubbard argued that he was entitled to withdraw his guilty plea under the recently handed down case, Bottoms v. Commonwealth, 281 Va. 23, 704 S.E.2d 406 (2011). The judge stated that he was familiar with the case and noted the exception but did not change his ruling. Subsequently, the circuit court sentenced Hubbard to an eighty-year sentence, with fifteen years suspended, and ten years supervised and five years unsupervised probation upon his release. Hubbard then noted this appeal.

II. Analysis

The decision to grant a defendant's motion to withdraw a guilty plea prior to sentencing is within the discretion of the trial court; thus, on appeal, the inquiry is whether the circuit court abused its discretion in denying Hubbard's motion to withdraw his guilty plea. See Justus v.

- 4 -

Commonwealth, 274 Va. 143, 156, 645 S.E.2d 284, 290 (2007) (applying an abuse of discretion standard in overturning a trial court's denial of a motion to withdraw a guilty plea).

Code § 19.2-296 governs withdrawals of guilty pleas. It provides that

> [a] motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

Although the statute does not explicitly provide a standard to guide circuit courts when ruling on a motion to withdraw a guilty plea made prior to sentencing, "the standard must be more liberal than the requirements of showing a manifest injustice." Justus, 274 Va. at 153, 645 S.E.2d at 288.

The Supreme Court discussed the standard for considering a pre-sentence motion to withdraw a guilty plea at length in Parris v. Commonwealth, 189 Va. 321, 52 S.E.2d 872 (1949).[2] The Court explained that generally

> "the withdrawal of a [pre-sentence] plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. *The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty.* Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable grounds is offered for going to the jury."

Id. at 325, 52 S.E.2d at 874 (emphasis added) (quoting 14 Am. Jur. Criminal Law § 287, at 961 (1938)).

---

[2] Although Parris was decided under former Rule 3A:25(d), "Parris remains the standard for consideration and review of a motion made under [Code § 19.2-296], which for all intents and purposes is identical to the former procedural rule." Justus, 274 Va. at 152, 645 S.E.2d at 288.

"Thus, the motion should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case."  Justus, 274 Va. at 154, 645 S.E.2d at 289. Put another way, "'the accused should be permitted to withdraw a plea of guilty entered [i]nadvisedly when application thereof is duly made in good faith and sustained by proofs, and a proper offer is made to go to trial on a plea of not guilty.'"  Bottoms, 281 Va. at 34, 704 S.E.2d at 412 (quoting Justus, 274 Va. at 153-54, 645 S.E.2d at 288).  However, the asserted defense cannot be merely dilatory or formal.  Justus, 274 Va. at 153, 645 S.E.2d at 288; Parris, 189 Va. at 324-25, 52 S.E.2d at 874.  The Parris test serves two purposes.  The good faith requirement "protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court," Cobbins v. Commonwealth, 53 Va. App. 28, 34, 668 S.E.2d 816, 819 (2008), and the reasonable defense requirement "defeats motions to withdraw which would result in an essentially futile trial," id.

It is important to note that a motion to withdraw a guilty plea is not reviewed under the same standard as a petition for a writ of habeas corpus, because they operate under different postures.  See Justus, 274 Va. at 154, 645 S.E.2d at 289.  As a result, there are several distinctions to be drawn.

> First, when the case remains within the jurisdiction of the trial court to permit the withdrawal of a guilty plea, the presumptions that would favor the Commonwealth in a habeas proceeding simply do not apply.  Second, when a defendant files a motion under Code § 19.2-296, he is necessarily seeking to repudiate the admission of guilt and some, if not all, of the admissions made in the guilty plea colloquy.  Moreover, the proper granting of a motion to withdraw a guilty plea under this statute is not dependent upon a determination that the defendant failed to receive adequate legal representation from counsel.

Id. Thus, focusing on "'admissions made by a defendant in a guilty plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 motion to withdraw a guilty plea prior to sentencing.'" Bottoms, 281 Va. at 33, 704 S.E.2d at 412.

The Supreme Court's recent decision in Bottoms provides a good illustration of how trial courts are to apply these principles. In Bottoms, the trial court denied the defendant's pre-sentence motion to withdraw his guilty pleas to two counts of construction fraud despite the defendant's claims that he lacked the necessary intent to defraud and did not fully understand the proceedings. Id. at 28-29, 704 S.E.2d at 408-09. The defendant asserted that he had actually started work on the contracts in question but had simply failed to perform properly in one case and had to cease work in the other due to his lack of a permit. Id. Despite the fact that the requisite intent for the crime could be shown even under these circumstances, the Supreme Court held that the defendant should have been allowed to withdraw his guilty pleas under the test established in Justus and Parris. Id. at 35-36, 704 S.E.2d at 413. The Court emphasized that, although the defendant's claims "would not affirmatively establish that [the defendant] was not guilty as a matter of legal impossibility . . . the defense was sufficient under the circumstances of [the] case to permit [the defendant] to assert that he had 'a reasonable defense to be presented to the judge or jury trying the case.'" Id. at 36, 704 S.E.2d at 413 (quoting Justus, 274 Va. at 154, 645 S.E.2d at 289). Furthermore, the defense was not merely "formal," because it was based on a lack of intent to commit the offense, and the defendant was not dilatory in asserting the defense, because there was no indication that he understood the elements of the offense at the time of his guilty plea. Id. at 35-36, 704 S.E.2d at 413.

It is clear in this case that the circuit court did not follow the correct standard in denying Hubbard's motion. "The circuit court in this case did not consider whether [the defendant's] proffered defense was reasonable, and not 'merely dilatory or formal.'" Id. at 34, 704 S.E.2d at

413.  Instead, the circuit court found that Hubbard was advised by "two experienced attorneys" and relied primarily on Hubbard's answers during the guilty plea colloquy in denying the motion.  "[R]eliance upon 'admissions made by a defendant in a guilty plea and the attendant colloquy . . . is misplaced in the context of a Code § 19.2-296 motion to withdraw a guilty plea prior to sentencing.'"  Id. at 33, 704 S.E.2d at 412 (quoting Justus, 274 Va. at 154, 645 S.E.2d at 289).

Hubbard asserted that he had a reasonable defense in that his motion was based on his claim that he lacked premeditation.  In response, the Commonwealth points to the plethora of evidence in the record supporting a finding of premeditation, but this argument misses the point.  The issue is not whether a court thinks a jury or other factfinder would necessarily accept the defense, but rather whether the proffered defense is one that the law would recognize as such *if* the factfinder found credible the facts supporting it.  As discussed in Bottoms, the issue of premeditation is an issue for the factfinder to decide, and the defendant is entitled to put on a reasonable defense if he has one.  During the hearing on the motion, Hubbard testified that he did not act with premeditation. [3]  Based on this testimony alone, a reasonable juror could believe Hubbard's testimony and find that the act was not premeditated.  Furthermore, the statement that the Commonwealth presented to the circuit court in support of Hubbard's guilty plea was silent as to his intent, but in any event, a defendant is entitled to place the credibility of any prior statements or sworn testimony in the hands of a jury if he so chooses.

However ineffective it might ultimately prove to be, Hubbard's proffered defense is also neither merely dilatory nor formal.  Premeditation goes to a defendant's intent, which is an

---

[3] The Commonwealth also argues that Hubbard failed to proffer detailed evidence of his defense, as required by Justus and Bottoms.  We disagree.  At the hearing, Hubbard testified that he did not believe that he had acted with premeditation.  There is no requirement in Justus or Bottoms that Hubbard make any additional proffer in the form of an affidavit or other evidence if the record otherwise demonstrates that his asserted defense is reasonable.

essential element of the crime Hubbard now stands convicted of, and therefore, Hubbard's

defense is not merely formal. See id. at 35-36, 704 S.E.2d at 413. Further, the record does not

support a finding that Hubbard's defense was merely dilatory. Rather, Hubbard testified that he

was pressured into accepting the plea deal by his attorneys despite having a defense as to the

charge, and the record does not reflect a pattern of behavior on Hubbard's part that would

support a conclusion that Hubbard's actions were merely an effort to impede the administration

of justice. Thus, "[t]he record supports the conclusion that [Hubbard's] motion to withdraw [his]

guilty plea[] was made in good faith and premised upon a reasonable basis for substantive, and

not 'merely dilatory or formal,' defenses." Justus, 274 Va. at 155-56, 645 S.E.2d at 290.[4]

We also find no merit to the Commonwealth's argument that the circuit court corrected

any misapplication of the law when it denied Hubbard's renewed motion to withdraw his guilty

plea prior to sentencing. Specifically, the Commonwealth asserts that the circuit court stated that

---

[4] We note that in this case the Commonwealth did not assert that it would be prejudiced in any manner if the circuit court were to have granted Hubbard's motion and that the circuit court made no finding of undue delay or misconduct by or on Hubbard's behalf. It is well established that a defendant's knowing and voluntary pretrial decisions may preclude him from exercising certain rights in the future, including constitutional rights, if they result in prejudice to the Commonwealth or if it will otherwise cause undue delay in the administration of justice. See e.g. Commonwealth v. Williams, 262 Va. 661, 671, 553 S.E.2d 760, 765 (2001) (holding that a circuit court did not abuse its discretion in denying a defendant's request to be tried by a jury where the defendant had previously waived a jury trial and the trial would have been substantially delayed and the cause of justice impeded if the defendant had been allowed to withdraw his waiver); Cruz v. Commonwealth, 24 Va. App. 454, 461, 482 S.E.2d 880, 883 (1997) (en banc) (holding that in order for a circuit court to proceed *in absentia*, it must first determine whether the defendant's absence denotes a waiver of the right to be present at trial and whether a continuance would be prejudicial to the Commonwealth). In the context of a motion to withdraw a guilty plea prior to sentencing, a defendant does not have an unbridled right to do so simply because he asserts that he has a reasonable defense and a motion to withdraw a guilty plea may be appropriately denied where the record indicates that there has been some form of significant prejudice to the Commonwealth. Such prejudice may exist where the record reflects that the Commonwealth has partially or fully fulfilled its obligations in a plea agreement by dismissing or amending charges or where the record supports a factual finding by the trial court that the purpose of the motion is merely to cause undue delay in the administration of justice or demonstrates other bad faith or misconduct by or on behalf of the defendant.

it was familiar with <u>Bottoms</u> and still denied Hubbard's motion. While a circuit court is presumed to know and follow the law, <u>see</u> <u>Caprino v. Commonwealth</u>, 53 Va. App. 181, 184, 670 S.E.2d 36, 37-38 (2008), any presumption is rebutted in this case. After counsel for Hubbard briefly argued for the application of <u>Bottoms</u>, the circuit court asked the Commonwealth if it had anything to add. The Commonwealth responded in the negative, and the circuit court stated "Okay; we'll note the case has been added. The ruling's the same." However, as discussed *supra*, in the absence of any factual finding of bad faith by Hubbard or prejudice to the Commonwealth, Hubbard's motion to withdraw his guilty plea satisfied the test set forth in <u>Parris</u>, which the Supreme Court reaffirmed in <u>Bottoms</u>.

### III. Conclusion

Because the trial court failed to apply the correct standard in denying Hubbard's motion to withdraw his guilty plea, the judgment of the circuit court is reversed. We remand this case to the circuit court for a new trial in which Hubbard may plead not guilty should he so choose.

<u>Reversed and remanded.</u>