UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Malveaux and Senior Judge Annunziata
Argued at Fredericksburg, Virginia


ASKIA CUFF

MEMORANDUM OPINION* BY
v.       Record No. 1300-16-4          JUDGE ROSEMARIE ANNUNZIATA
AUGUST 15, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Lisa B. Kemler, Judge

Patricia Palmer Nagel (The Law Offices of Patricia Palmer Nagel,
P.L.C., on briefs), for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Askia Cuff ("appellant") appeals his convictions of rape, sexual battery, burglary,

attempted robbery, use of a firearm in the commission of a felony, assault and battery by a mob,

assault and battery, brandishing a firearm, and two counts of attempted abduction.  On appeal,

appellant contends the trial court erred in denying his motion to withdraw his guilty pleas to the

charges.  For the reasons that follow, we affirm appellant's convictions.

BACKGROUND

At a hearing on January 28, 2016, appellant entered guilty pleas upon reduced charges.[1]

In the guilty plea form appellant and his retained attorney, Peter Greenspun, signed, appellant

acknowledged his understanding of the charges against him, that he was in fact guilty of the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to a written plea agreement, the Commonwealth amended the indictment to
reduce five of the charged offenses from felonies to misdemeanors.

offenses, and that he was aware of the punishment he could face upon conviction. The form also

included a recitation that the Commonwealth agreed to recommend a sentence of forty-six years

of incarceration with all but twelve years and six months suspended. In response to the trial

court's questions, appellant stated that he was entering his pleas because he was guilty of the

offenses, that he had had adequate time to consult with Greenspun about all aspects of the case,

and that he and Greenspun had discussed any possible defenses to the charges. Appellant

acknowledged that his pleas were made knowingly and voluntarily. Following the plea colloquy,

the prosecutor summarized the evidence she would have produced at trial, as follows:

> On April 26, 2015, two females, [C.W. and D.M], . . .
> rented a room at the Hilton Hotel . . . in the City of Alexandria.
> Both girls had traveled to the Alexandria area to work by posting
> ads on backpage.com.[2]

> On the evening of April 26th [D.M.] received a call from a
> man responding to her backpage ad. She gave him the details
> about where to meet and they arranged to meet at her hotel room
> . . . .

> From the conversation that they had [D.M.] expected that
> only one man would show up. Since the two girls were sharing the
> same hotel room, [C.W.] planned to hide out in the bathroom while
> [D.M.] was with her client.

> When the knock at the door came [D.M.] opened it to find
> that there were two men and saw that one of the men had a gun.
> The men forced their way in knocking [D.M.] to the ground.
> [D.M.] screamed, kicked, and tried to fight the men off but they hit
> her and threatened to shoot her if she did not stop screaming.

> The two men yelled at her to tell them where the money
> was as they looked around the room. At one point [D.M.]
> managed to reach for the hotel room phone but one of the men
> grabbed it from her and yanked it completely out of the wall
> disconnecting [D.M.'s] source to call the police.

> The two men then kicked and punched [D.M.] in the face
> and head several times. They then forced her face down into the

---

[2] A receipt from the hotel, which was contained in the Commonwealth's response to appellant's motion for discovery, indicated that the room was rented to D.M. on April 23, 2015 to April 27, 2015.

pillow and order[ed] her not to look at them. One of the men, identified as Roderick Ramsey, left the bedroom portion of the hotel room while [appellant] . . . continued the physical assault on [D.M.].

While this was taking place, [C.W.] was still hiding behind the bathroom door listening to the awful things that were happening to her friend. She could hear [D.M.] crying, begging the men to stop hurting her and to let her go.

[C.W.] had a cell phone with her and tried to place a call to 911 but had to hang up quickly when Ramsey entered the bathroom. Ramsey found [C.W.] behind the door, dragged her out, and began to rape her.

At one point [appellant] then entered the bathroom and Ramsey left . . . [appellant] alone with [C.W.]. [Appellant] told [C.W.] she better shut the expletive up or else he would do to her what he had done to [D.M.].

[Appellant] then forced his penis into her mouth, pulled it out to stop to put on a condom, and vaginally raped her. Before [appellant] finished he pulled his penis out of [C.W.], pulled off the condom, and ejaculated on her forehead and hair.

When he was finished, [appellant] told [C.W.] to stay in the bathroom and threatened to kill her if she called the police. He then left the bathroom and went into the bedroom where Ramsey was continuing to assault [D.M.].

[Appellant] ultimately went back into the bathroom and dragged [C.W.] out onto the floor next to where Ramsey and [D.M.] were. The two men continued to tell the girls not to look at their faces.

While [appellant] stood by[,] Ramsey pulled [D.M.] under [C.W.] and demanded she suck on [D.M.'s] breasts. [Appellant] then began to pace about the room making statements to the effect that the two men needed to get out of there.

Unbeknownst to Ramsey and [appellant], police had already been called by hotel security and were gathered outside the door. When [appellant] went over to the hotel room door, he opened it to peek out and police forced their entry inside.

[Appellant] and Ramsey were apprehended by police. The police observed that the two females were completely naked, crying, and emotional. Police also located a black object on the

bed that appeared to be a gun.  Police secured the scene, collected evidence, and took photographs.

Police observed the phone pulled out of the wall, a lamp knocked over, a suitcase dumped out, and a used condom.  [C.W.] and [D.M.] were transported and had forensic exams conducted.  Photographs were taken of the girls and samples were taken from them.  [D.M.] was treated for a nasal fracture.

Subsequent DNA testing revealed the following evidence from the physical evidence recovery kit from [C.W.].  A sample was recovered from the hair and fibers.  Spermatozoa was identified.

A DNA profile was developed from the sperm fraction from which [appellant] cannot be eliminated as a contributor.  A DNA profile was also developed from the non-sperm fraction from which [appellant] cannot be eliminated as a contributor.

From the condom collected in the hotel room a sample was recovered from the interior of the condom.  A DNA mixture profile was developed.  [Appellant] could not be eliminated as a major contributor.  A sample was also collected from the exterior of the condom.  A DNA mixture profile was developed.  [Appellant] and [C.W.] could not be eliminated as contributors.

The Commonwealth's evidence would have also shown that while awaiting trial in this matter [appellant] admitted his involvement in the assault against the two victims to another inmate at the Alexandria Detention Center.

The trial court accepted appellant's pleas and found him guilty of the offenses.

After the guilty plea hearing and prior to sentencing, appellant's father, William Cuff (Cuff), and appellant's family expressed disagreement with the plea agreement.  Appellant advised Greenspun to give Cuff and the family access to the discovery materials in the case.  At a meeting held at Greenspun's office, where the family reviewed evidentiary materials, Cuff behaved in an aggressive and rude manner, expressing displeasure with the agreement.  Following that meeting, Greenspun heard nothing more from appellant or Cuff until learning that Patricia Nagel had been retained and that appellant was moving to withdraw his guilty pleas.

The trial court held an evidentiary hearing on May 13, 2016 on appellant's motion to withdraw his guilty pleas. At the hearing, appellant testified that Cuff retained Greenspun on appellant's behalf[3] and he believed that neither Greenspun nor his associate, Muhammad Elsayed, provided him with his complete case file, as he requested. Appellant also claimed that the attorneys did not discuss with him any possible defenses he might have to the charges.

According to appellant, on January 23, 2016, Greenspun approached appellant with the plea agreement he had negotiated on appellant's behalf with the Commonwealth. Appellant testified Greenspun pressured him to accept the plea agreement, and threatened to withdraw from the case if appellant refused. Appellant said he was frightened by Greenspun's threat to withdraw and believed Greenspun would do so if he did not accept the plea agreement. Appellant stated he would not have entered his guilty pleas otherwise. However, he admitted that Greenspun also said he was "joking" about withdrawing from the case if appellant did not take the plea agreement. Appellant testified that Greenspun advised him about the possible consequences he faced if he went to trial and was convicted by a jury, including a sentence of life imprisonment.

Greenspun testified at the May 13, 2016 hearing. Greenspun stated that he and Elsayed met with appellant numerous times at the jail. The attorneys discussed with appellant the Commonwealth's evidence against him, and provided appellant with copies of the discovery materials appellant did not already possess. Greenspun stated that he explored all the evidence to

---

[3] Initially, appellant was represented by the public defender. However, in September 2015 the public defender was permitted to withdraw and Greenspun was substituted as appellant's counsel.

- 5 -

determine whether there were weaknesses in the Commonwealth's case that could be exploited and discussed with appellant "what could be done to contest the case" if the matter went to trial.[4]

In January 2016, Greenspun negotiated with the prosecuting attorneys to obtain a plea agreement for appellant. On January 21, 2016, Greenspun drafted a letter to appellant containing the details of the plea deal the Commonwealth had offered. Specifically, Greenspun mentioned a total active sentence of thirteen and one-half years, the application of good time credit, and the terms of probation. Greenspun also advised appellant of the possible outcomes appellant could face if convicted in a jury trial. Greenspun advised appellant to accept the offer, considering the small likelihood of success at the guilt phase of trial and the prospect of a severe sentencing recommendation from a jury.

In further discussion about the plea agreement, appellant asked about the strength of Greenspun's conviction that appellant should accept the agreement. Greenspun said he felt so strongly that if appellant did not accept the deal Greenspun would withdraw as his attorney. However, within seconds, Greenspun further said, "No, not really. I don't bail out on people, but that's how strongly I feel about this."[5]

---

[4] Specifically, Greenspun testified that appellant questioned whether he could be convicted of burglary because one of the victims had opened the door to the hotel room. Greenspun explained that this was not a viable legal defense to the charge. He also discussed with appellant how the presence of a foreign DNA profile on a towel found in the hotel room could be used in appellant's favor.

[5] At the hearing on the motion to withdraw the guilty pleas, Cuff testified that Greenspun made the statement about getting out of the case during a telephone conversation between them prior to the guilty plea hearing. Cuff said he confronted Greenspun about the statement on the day of the plea hearing. Cuff testified that Greenspun responded, "I didn't mean that. You know I wouldn't do that." Cuff's daughter, who was present for the conversation, testified Greenspun had only been joking and that he commented, "I'm not going anywhere."

Greenspun also testified about the conversation he had with Cuff that day. Greenspun confirmed that Cuff questioned him about what would happen if appellant did not take the plea agreement. Greenspun said he would "get out of the case" but then denied he would do so. Greenspun added that he would take the case to trial, but to do so could be a "disaster."

After Greenspun wrote the letter outlining the plea agreement, the Commonwealth agreed to reduce the recommended active sentence to twelve and one-half years.[6] The Commonwealth imposed a January 28, 2016 deadline for appellant to accept the agreement due to the need to purchase airline tickets for the victims to travel to Virginia for trial. Appellant signed the plea agreement on January 27, 2016. During the January 28, 2016 hearing in which the plea agreement was presented to the trial court, appellant never said he had changed his mind or that he did not want to enter the guilty pleas.

At the hearing on appellant's motion to withdraw his pleas, in addition to the proffer of evidence made at the January 28, 2016 hearing, the Commonwealth introduced photographs of the crime scene taken by the police. Detective Amy Santiago testified regarding her observation of physical injuries to the two victims. Moreover, the Commonwealth introduced evidence of an intercepted telephone call from appellant to Cuff after the guilty plea hearing. In the conversation, appellant commented that Greenspun was "all right." Appellant also said that he understood what Greenspun had "told him in the sentencing" and that he "understood what the sentencing was going to be."

Furthermore, the Commonwealth introduced recordings of conversations between the police and the jail inmate to whom appellant made statements admitting involvement in the incident.[7] Appellant and the inmate became acquainted in jail after appellant's arrest. The inmate received an unsigned letter asking for his help to "beat the system." Subsequently, appellant and the inmate had a conversation in the jail shower stalls, where there were no

_____

[6] In the fall of 2014, while he was represented by the public defender, appellant refused to accept a plea agreement that would have called for a term of incarceration greater than the active sentence later negotiated by Greenspun.

[7] The trial court admitted the recording at the hearing, but the recording was not played in court.

cameras. Appellant told the inmate that appellant and Ramsey were drunk when they went to the hotel room with the plan of robbing a prostitute with a toy gun. Appellant admitted that there were two women in the room, he had one of them commit fellatio upon him, the situation got out of hand, and he had wanted to leave.

At the May 13, 2016 hearing the trial court questioned appellant about possible defenses to the charges. Appellant said he would claim that he had consensual sex with C.W. and that the victims' testimony was not credible or sufficient to prove he committed the offenses.[8] In addition, a towel found in the hotel room was tested by the state laboratory. The sperm fraction recovered from the towel contained a DNA profile foreign to appellant or Ramsey.[9]

The trial court denied appellant's motion to withdraw his guilty pleas. The trial court found that appellant's motion to withdraw was not made in good faith and that appellant had not

---

[8] On appeal, appellant also relies upon allegedly false posts to Facebook by the victims to demonstrate that he did not commit the offenses. Appellant did not raise this issue in his motion to withdraw his pleas or at the May 13, 2016 hearing. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this aspect of appellant's argument on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

[9] On appeal, appellant asserts that the towel tested was the same one C.W. used to clean herself after she had sexual contact with appellant in the bathroom. In support of this claim, appellant cites a statement made in the Commonwealth's motion to preclude evidence pursuant to Code § 18.2-67.7, Virginia's rape shield statute, that the victim had "cleaned herself up with a towel from the floor." However, this allegation was not made in the proffer of anticipated evidence at the January 28, 2016 hearing. The record contains no affirmative evidence that the towel tested by the state laboratory was the same one C.W. may have used after the attack.

presented evidence of a reasonable defense to the charges. In addition, the trial court found that to grant the motion to withdraw would result in prejudice to the Commonwealth and delay in the administration of justice.

ANALYSIS

Code § 19.2-296 provides:

> A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea.

There is no

> general rule . . . as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances. Generally, however, it may be said that the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury.

Parris v. Commonwealth, 189 Va. 321, 325, 52 S.E.2d 872, 874 (1949) (quoting 14 Am. Jur. Criminal Law § 287).

The decision to allow a defendant to withdraw his guilty plea rests "within the sound discretion of the trial court and is to be determined by the facts and circumstances of each case." Id. at 324, 52 S.E.2d at 873. "This Court has noted previously that 'we should reverse only upon "clear evidence that [the decision] was not judicially sound . . . .""" Coleman v. Commonwealth,

51 Va. App. 284, 289, 657 S.E.2d 164, 166 (2008) (quoting Jefferson v. Commonwealth, 27 Va. App. 477, 488, 500 S.E.2d 219, 225 (1998)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred" with regard to a trial court's denial of a motion to withdraw a guilty plea. Williams v. Commonwealth, 59 Va. App. 238, 246-47, 717 S.E.2d 837, 841 (2011) (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006)).

In Branch v. Commonwealth, 60 Va. App. 540, 546, 729 S.E.2d 777, 780 (2012) (emphasis added), this Court found:

> While this sentiment establishes that the test [regarding withdrawal of a guilty plea] is a relatively liberal standard, Parris and subsequent cases have made clear that a motion to withdraw a guilty plea made prior to sentencing should only be granted if a two-part test is satisfied: *first, that the motion is made in good faith, and second, the defense advanced in support of the motion is reasonable and not merely dilatory or formal*. Id. at 324-25, 52 S.E.2d at 874; Justus [v. Commonwealth], 274 Va. [143,] 153, 645 S.E.2d [284,] 288 [(2007)),] (holding that a pre-sentence motion to withdraw a guilty plea "should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case"); Bottoms v. Commonwealth, 281 Va. 23, 32-33, 704 S.E.2d 406, 412 (2011) ("the proper standard requires the court to determine only whether, based on the facts and circumstances of the particular case, the [pre-sentencing] motion to withdraw a guilty plea is being made in good faith and is premised upon a reasonable basis that the defendant can present substantive, and not merely dilatory or formal, defenses to the charges").

In addition, in Small v. Commonwealth, 292 Va. 292, 298, 788 S.E.2d 702, 705 (2016), the Supreme Court of Virginia "recognize[d] prejudice to the Commonwealth as a relevant factor that should be considered when reviewing a motion to withdraw a guilty plea."

Appellant claims his motion to withdraw was made in good faith because his pleas were coerced by pressure from Greenspun. "The good faith requirement 'protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate

- 10 -

the court . . . .'" Hubbard v. Commonwealth, 60 Va. App. 200, 208, 725 S.E.2d 163, 166-67 (2012) (quoting Cobbins v. Commonwealth, 53 Va. App. 28, 34, 668 S.E.2d 816, 819 (2008)).

The record reflects that Greenspun, in strong terms, advised appellant to accept the plea agreement, stating that if appellant did not take the offer, he would withdraw from the case. Nonetheless, Greenspun testified, and appellant and Cuff admitted, that Greenspun also said he was joking and that he would remain in the case regardless of appellant's decision. Thus, there was no factual support for appellant's contention that his guilty pleas were a product of coercion from his attorney.

Greenspun discussed with appellant the strengths and weaknesses of the Commonwealth's evidence. They also discussed potential defenses to the charges. Nonetheless, appellant accepted the plea agreement after these discussions and with full disclosure of the ramifications of the decision. Greenspun wrote appellant a letter advising of the terms of the offer, the likelihood of success at trial, and the possible consequences appellant faced if he went to trial. Greenspun opined that accepting the plea was in appellant's best interests. At the guilty plea hearing, appellant made no mention or claim of pressure or coercion imposed by Greenspun, and appellant expressed no reservation about his decision. In a telephone call to his father after the hearing, appellant affirmed his belief that he understood and agreed with the plea bargain Greenspun had negotiated. In fact, until Cuff retained another attorney to replace Greenspun, no allegation of coercion was raised. In light of these facts and circumstances, appellant's claim of coercion merely tends to indicate appellant "took a look at what the consequences might be after he pled guilty and had buyer's remorse," not that he was acting in good faith in seeking to withdraw his pleas. Branch, 60 Va. App. at 548, 729 S.E.2d at 781.

Nor does the record reflect that appellant demonstrated a reasonable defense to the charges. "A reasonable defense sufficient to withdraw a guilty plea is 'one based upon a

- 11 -

proposition of law or one supported by credible testimony, supported by affidavit.'" Ramsey v. Commonwealth, 65 Va. App. 593, 602, 779 S.E.2d 241, 245 (2015) (quoting Williams, 59 Va. App. at 249, 717 S.E.2d at 842). "[A] defense 'based solely upon a challenge to the credibility of a victim's testimony' is not a reasonable defense that would warrant withdrawal of a guilty plea." Id. at 602, 779 S.E.2d at 246 (quoting Williams, 59 Va. App. at 249, 717 S.E.2d at 842). Thus, appellant's bare claim that the sex was consensual and that the victims' testimony was unworthy of belief did not amount to a reasonable defense sufficient to warrant withdrawal of his pleas. See id.

The Commonwealth's proffer of evidence was that appellant and Ramsey forced their way into the hotel room, threatened D.M. with an apparent firearm, demanded money, beat the victims, and forced them to engage in sexual acts against their will. The proffer of evidence was corroborated by DNA evidence connecting appellant to the crimes against C.W. The police had been alerted to a situation in the hotel room, and were waiting at the door when appellant and Ramsey tried to flee. The condition of the hotel room, as depicted in photographs, was consistent with the victims' descriptions of the attacks. The police found the two victims naked, emotional, distraught, and physically injured. The police also found what appeared to be a gun in the hotel room. Tellingly, appellant made admissions to a fellow inmate that he and Ramsey went to the hotel with a plan to rob a prostitute and that he had sexual contact with at least one of the women in the room.

Nor did the presence of a foreign male DNA profile on a hotel towel tend to disprove any element of the charged offenses. The towel was discovered in a hotel room that was rented for the purpose of prostitution several days before the offenses occurred. The presence of another male's DNA on the towel had no tendency to show that appellant was never present in the room or that he was not one of the perpetrators of the offenses. Thus, considering all the facts and

circumstances, the trial court did not abuse its discretion in concluding appellant failed to make a showing of a reasonable defense had he been permitted to withdraw his pleas and proceed to trial.[10]

CONCLUSION

For the foregoing reasons, the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty pleas. We affirm appellant's convictions.

<u>Affirmed.</u>

---

[10] Appellant asserts the trial court erred in finding the Commonwealth would be prejudiced if appellant's motion to withdraw was granted because the victims "were never under subpoena." To the contrary, the record contains a "Subpoena Report" from the "Alexandria Justice Information System" indicating subpoenas were requested for both victims for a scheduled trial to begin on February 22, 2016, though no addresses were listed for the two women. Nonetheless, having reached the conclusions that there was no good faith basis for appellant's motion to withdraw and that he did not assert a reasonable defense, we need not consider whether the trial court erred in finding the Commonwealth would be prejudiced by a withdrawal of appellant's guilty pleas.