COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Lorish

RONDELL DAVIS

v.      Record No. 0441-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 3, 2025

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

(Michael B. Gunlicks; Gunlicks Law, L.C., on brief), for appellant.

(Jason S. Miyares, Attorney General; C. David Sands, III, Senior
Assistant Attorney General, on brief), for appellee.

Rondell Davis appeals his convictions, following guilty pleas, for second-degree murder,

use of a firearm in commission of a felony, and robbery using a firearm, in violation of Code

§§ 18.2-32, -53.1, and -58. On appeal, Davis argues that the trial court erred when it denied his

motion to withdraw his guilty pleas. For the following reasons, we disagree, and affirm the

convictions.[1]

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive issue or issues have been authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

UNPUBLISHED

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On December 8, 2021, Davis was charged with first-degree murder of A.W., robbery, two counts of use of a firearm in commission of a felony, and possession of a firearm by a violent felon on November 30, 2021.[2] Davis was also charged with an unrelated robbery of S.D. and use of a firearm in commission of a robbery on November 25, 2021. Three attorneys were appointed to represent Davis in his cases: Public Defenders Annalisa Feinman and Tracy Paner were appointed to represent Davis on the charges stemming from the November 30, 2021 incident, and Pratt Cook was retained to represent Davis on the charges from the November 25, 2021 event.

On October 19, 2022, Davis signed a plea agreement to resolve all seven of his pending charges. Davis agreed to plead guilty to second-degree murder of A.W., use of a firearm in commission of a felony, and robbery with a firearm on November 30, 2021. In exchange for Davis's guilty pleas, the Commonwealth amended the first-degree murder charge to second-degree murder and nolle prossed the remaining matters. After conducting a plea colloquy, the trial court found that Davis entered his guilty pleas freely, voluntarily, and intelligently.

Davis stipulated that the Commonwealth's evidence at trial would establish that on November 30, 2021, Davis and three co-conspirators planned to rob A.W. The group lured A.W. to an apartment complex, ambushed A.W., brandished firearms, and demanded A.W.'s property. A.W. reached for his firearm and, in response, Davis shot A.W. twice in the back. Davis took

---

[2] The record below primarily refers to the victim by his initials instead of his full name. We will continue this practice when referencing Davis's victims.

A.W.'s backpack and fled with his co-defendants to a nearby apartment; A.W. died at the scene. Shortly after the shooting, a patrol officer responding to the report of gunshots found A.W. A subsequent autopsy determined that A.W. died from two gunshot wounds to the back.

When Davis and his co-defendants were arrested, officers recovered the clothing Davis and the others had worn at the time of the shooting as well as two firearms involved in the incident. Officers later searched Davis's aunt's home and discovered A.W.'s backpack and the rifle Davis had used during the robbery. Forensic analysis determined that the bullets recovered from A.W.'s autopsy exhibited similar general rifling class characteristics as the rifle Davis used. Additionally, casings recovered at the scene were determined to have been fired from the recovered rifle.

When Richmond police detectives interviewed Davis and his co-defendants, each confessed to their involvement in the crimes. Davis specifically admitted that he and his co-defendants had lured A.W. to the area with the intention of robbing him and that Davis had shot A.W. twice upon seeing A.W.'s firearm. Davis also admitted that he and his co-defendants had robbed S.D. in a similar manner on November 25, 2021, and that Davis had taken S.D.'s cell phone and sneakers. At the time of Davis's interview, he was wearing S.D.'s distinctive black and yellow sneakers.

The trial court found Davis guilty of the crimes as stated in the plea agreement and granted the Commonwealth's motion to nolle pros the remaining charges. The matter was continued for sentencing on April 7, 2023.

On April 5, 2023, Davis moved to withdraw his guilty pleas, arguing he entered his pleas under coercion and undue influence. He maintained his innocence and asserted that he wished to present evidence "as to an alternate suspect." On April 11, 2023, attorneys Feinman and Paner filed a motion to withdraw as Davis's counsel, which the trial court granted. The trial court

appointed another attorney to represent Davis in his motion to withdraw his guilty pleas and continued the matter.

At the September 15, 2023 hearing on Davis's motion to withdraw his guilty pleas, Davis testified that he was pressured to plead guilty.[3] Though he did not identify them by name, Davis claimed that people close to him pressured him to take the plea agreement to cover for someone else. Additionally, he claimed people close to A.W. threatened to hurt his family if he did not plead guilty. He asserted that these threats were being sent to his sister via text message. Davis admitted that he did not report the threats made against him to police or jail personnel.

Davis also asserted that his attorneys pressured him to sign the plea agreement. He claimed that his attorneys refused to show him discovery materials from the Commonwealth until after he signed the plea agreement. He claimed that when he finally reviewed the discovery materials, he learned about a Crime Stoppers tip that stated he was not at the crime scene when the robbery occurred. Davis claimed that he had a witness available to testify that he was not present for the crime but admitted that he did not tell his previous attorneys about his alibi witness. Davis also denied telling Detective Sleem that he had shot A.W.; he testified that he could not remember reviewing surveillance footage of his crimes with the detective, reviewing discovery with his attorneys, signing the plea agreement, or even engaging in the plea colloquy with the trial court.

Detective Amira Sleem investigated A.W.'s death. During her testimony at the September 15 hearing, Detective Sleem outlined her investigative steps and her interactions with Davis. She testified that her investigation found that A.W. did not have any gang affiliation. She reviewed surveillance video from the crime scene and observed A.W., carrying a backpack,

---

[3] Davis admitted he was a felon and had been convicted of crimes of moral turpitude.

- 4 -

enter a breezeway outside of the camera's view. Moments later, A.W. and several people appeared to be running away from the breezeway.

Later when Detective Sleem interviewed Davis, Davis admitted that he and his co-defendants had planned to lure A.W. to the apartment complex to rob him. When Davis observed that A.W. was armed, Davis shot A.W. twice in the back before fleeing. Davis asserted that he had not meant to kill A.W. and simply wished to rob him. Detective Sleem showed Davis the surveillance video, and Davis identified himself and his co-defendants as they fled. Davis was carrying A.W.'s backpack away from the scene. Davis also confessed to his involvement in a robbery of S.D. on November 25, 2021.

When police interviewed Davis's co-defendants, each of them confessed to their and Davis's involvement in the crimes. Detective Sleem noted that Davis's cousin had told police officers that he saw Davis put A.W.'s stolen property and a weapon inside Davis's aunt's home. Officers later located A.W.'s backpack and a rifle in Davis's aunt's home. Detective Sleem denied threatening Davis or using force against Davis during her interview with him.

Attorneys Cook, Paner, and Feinman testified that over the course of several months they received discovery from the Commonwealth. Each time they received new discovery, they reviewed the material with Davis. Attorney Cook noted that he discussed the Commonwealth's evidence with Davis six or seven times before Davis pleaded guilty and that those meetings ranged from an hour to several hours. Additionally, he reviewed the plea agreement with Davis several times and how the plea agreement would affect his sentencing guidelines.

Attorneys Paner and Feinman denied withholding any discovery material from Davis until he signed the plea agreement and asserted that they reviewed the plea agreement with Davis a dozen times. Each attorney noted that although they highly recommended that Davis take the plea agreement, it was Davis's decision whether to plead guilty. Each attorney denied forcing,

threatening, or blackmailing Davis to sign the plea agreement or observing another attorney coerce Davis to sign the plea agreement.

After arguments from counsel, the trial court took the matter under advisement. In an order opinion, the trial court found that Davis failed to provide testimony sufficient to support his claim that he was pressured to plead guilty to the charges. The court found that Davis was presented with discovery materials from the Commonwealth and with sentencing guidelines on all his charges before he entered his pleas. Additionally, Davis presented no information about the timing of the alleged threats from others to accept the plea agreement, nor did he offer evidence from family members aware of these purported threats. Although there was an anonymous source that asserted that Davis was being framed for A.W.'s murder, the trial court noted that the tip was not received until nearly six months after the guilty plea was entered and two years after Davis had been indicted.

Upon these findings, the trial court denied Davis's motion to withdraw his guilty pleas. Later, the trial court sentenced Davis to 53 years of incarceration, with 28 years suspended. Davis appeals.

ANALYSIS

Davis argues that the trial court erred by denying his motion to withdraw his guilty pleas. "We review a court's decision to deny a motion to withdraw a plea of guilty or *nolo contendere* under an abuse of discretion standard." *Spencer v. Commonwealth*, 68 Va. App. 183, 186 (2017) (citing *Pritchett v. Commonwealth*, 61 Va. App. 777, 785 (2013)). Accordingly, we will only reverse the circuit court's ruling upon "clear evidence that [the decision] was not judicially sound." *Id.* (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred" with

regard to a circuit court's denial of a motion to withdraw a guilty plea. *Williams v. Commonwealth*, 59 Va. App. 238, 246-47 (2011) (quoting *Tynes v. Commonwealth*, 49 Va. App. 17, 21 (2006)).

"A motion to withdraw a plea of guilty . . . may be made only before sentence is imposed or imposition of a sentence is suspended; but to correct manifest injustice, the court within twenty-one days after entry of a final order may set aside the judgment of conviction and permit the defendant to withdraw his plea." Code § 19.2-296. Motions to withdraw a guilty plea are governed by two standards depending on when the motion is made. "A motion to withdraw a guilty plea made after sentencing is governed by the 'manifest injustice' standard." *Brown v. Commonwealth*, 297 Va. 295, 300 (2019) (emphasis omitted). In contrast, motions made before a defendant is sentenced should be granted if the plea was entered "by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury." *Pritchett*, 61 Va. App. at 786 (quoting *Parris v. Commonwealth*, 189 Va. 321, 325 (1949)).

To satisfy the "more forgiving" pre-sentence standard, Davis had "the burden of establishing that his motion is made in good faith" and "proffer evidence of a reasonable basis for contesting guilt." *Spencer*, 68 Va. App. at 187. The trial court must also consider whether the Commonwealth would be prejudiced by granting the motion. *Pritchett*, 61 Va. App. at 787; *Hubbard v. Commonwealth*, 60 Va. App. 200, 211 n.4 (2012).

"A reasonable defense sufficient to withdraw a guilty plea is 'one based upon a proposition of law or one supported by credible testimony, supported by affidavit.'" *Ramsey v. Commonwealth*, 65 Va. App. 593, 602 (2015) (quoting *Williams*, 59 Va. App. at 249). "[T]he reasonable defense requirement 'defeats motions to withdraw which would result in an essentially futile trial[.]'" *Hubbard*, 60 Va. App. at 208 (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)). The

appellant need not present proof that he would prevail on his asserted defense, but only that evidence that allows the court "to determine whether [he] has made a *prima facie* showing of a reasonable defense." *Hernandez v. Commonwealth*, 67 Va. App. 67, 79 (2016). "To meet the burden of introducing *prima facie* evidence of a reasonable defense, [the appellant] is required to 'proffer[] . . . sufficient facts to support the asserted defense, such that it is reasonable to present it to the judge or jury trying the case.'" *Spencer*, 68 Va. App. at 189 (second and third alterations in original) (quoting *Hernandez*, 67 Va. App. at 79).

Here, regardless of whether Davis demonstrated that his motion to withdraw was made in good faith, he did not establish a reasonable defense to the charges. Davis claimed that his peers pressured him to take the Commonwealth's plea deal to cover for someone else, that people close to A.W. threatened him to take the plea agreement, and that his attorneys pressured him to take the plea agreement. Davis, however, failed to identify any peers who pressured him or the person they wished to protect from prosecution. Additionally, Davis provided no timeline for the context of the threats A.W.'s associates allegedly made, provided no specific language used in the threats, offered no testimony from family members about the threats, or clarified who was threatening him.

Despite Davis's testimony that his attorneys did not show him discovery material until after he pleaded guilty to the charges, each of Davis's previous attorneys testified that they reviewed discovery material with Davis on numerous occasions and discussed the pros and cons of accepting the Commonwealth's plea agreement before Davis ultimately pleaded guilty. Each attorney also denied pressuring Davis to take the plea agreement or observing another attorney pressure Davis. Although the attorneys candidly admitted that they recommended Davis take the plea deal, each of them also made it clear that the choice to accept the deal was Davis's alone. While Davis points to an anonymous tip that Crime Stoppers received as evidence in support of his defense, that tip was

received two years after his indictment and six months after his guilty pleas. Moreover, Davis named no witnesses or proffered what his alibi defense would be.

Finally, Davis contends that he entered the pleas "inadvisedly"; we disagree. Here, Detective Sleem testified that she viewed surveillance footage that showed A.W. arrive at the crime scene with a backpack. Moments later, several people fled that scene, including Davis who was carrying A.W.'s backpack. Based on a tip from Davis's cousin, officers recovered A.W.'s backpack and the weapon Davis used during the robbery at Davis's aunt's home. Upon being interviewed by officers, Davis and his co-defendants admitted to their involvement in the robbery of A.W. as well as the robbery of S.D. days earlier. Davis identified himself in the surveillance footage and admitted that he shot A.W. twice upon seeing A.W.'s firearm. Forensic analysis confirmed that the recovered rifle was the likely murder weapon. Nothing in the record suggests that the attorneys' recommendation to accept the plea deal was coercive. Rather, counsel offered sound advice which Davis chose to take.

In sum, Davis offered no evidence to support anything other than an insubstantial or "formal" defense and nothing in the record supports an assertion that the guilty pleas were entered "inadvisedly." Consequently, the trial court did not err in denying Davis's motion to withdraw his guilty pleas.[4]

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[4] The Commonwealth argues that Davis's argument has been waived for his failure to satisfy Rule 5A:20, because the brief does not include "principles of law and authorities" supporting a lack of prejudice to the Commonwealth by the grant of the plea withdrawal. While Davis's brief asserts that "there would not be true prejudice to the Commonwealth because the other defendants in the offenses had not been tried at the time of the motion [to withdraw the guilty pleas], and that all witnesses and evidence were still available," we hold that Davis's brief satisfactorily presents "principles of law and authorities," albeit rudimentarily.