COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Causey and Senior Judge Haley
Argued at Richmond, Virginia


VIRGINIA HARRIS PETTY

v.      Record No. 0976-21-2

COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION* BY
VIRGINIA HARRIS PETTY                               JUDGE RICHARD Y. ATLEE, JR.
                                                    AUGUST 16, 2022
v.      Record No. 1091-21-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge[1]

Michael Hartley, Assistant Public Defender (Vikram Kapil, Public
Defender; Jennifer Jones, Assistant Public Defender, on briefs), for
appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Appellant Virginia Harris Petty appeals her sentence, following a guilty and no contest plea,

respectively, to hit and run, in violation of Code § 46.2-894, and reckless driving, in violation of

Code § 46.2-852. Petty asserts that the Circuit Court of Halifax County ("trial court") abused its

discretion when it sentenced her to the statutory maximum for each charge. For the following

reasons, we disagree and affirm the trial court's decision.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Kimberley S. White presided over the proceedings below. Now a
member of this Court, Judge White took no part in this decision.

## I. BACKGROUND

Under settled principles, we state the facts in the light most favorable to the Commonwealth, the prevailing party below. *Gerald v. Commonwealth*, 295 Va. 469, 472-73 (2018). Petty pled guilty to felony hit and run and no contest to misdemeanor reckless driving. After conducting a colloquy with Petty, the trial court accepted Petty's pleas and convicted her of the two charges.

The Commonwealth proffered that on September 1, 2019, Petty was driving on Highway 40, also known as Stage Coach Road, in Halifax County. A large family gathering was taking place at a private residence off that road, and a number of cars were waiting to turn into the driveway. Petty, who was in that line of traffic, crossed partially into the opposite lane of travel and sped around as one of the vehicles was turning into the driveway. As Petty accelerated, she lost control of her car and drove into the yard of the residence. She struck Aruyes Lamar Townsend and Donovan Raheed Stone, who were attending the gathering and standing in the yard several feet from the road. Without stopping, Petty drove away. After leaving the scene, Petty made no attempt to contact law enforcement.

At the scene of the accident, the police found a license plate and pieces of the vehicle's front headlight. Officers traced the license plate to Petty's grandmother, Barbara Loving. Loving confirmed that Petty had used the vehicle on the day of the accident. About sixteen hours after the accident, law enforcement contacted Petty. Petty cooperated with the officers and allowed the police to retrieve evidence from the vehicle. She admitted that she had been involved in the accident and that she left the scene. She claimed she left because she heard gunfire and believed it had been aimed at her vehicle. Officers did find spent cartridges in the road. Marks on the road indicated that Petty attempted to brake. Stone was hospitalized and

- 2 -

recovered from his injuries. Townsend, however, died from blunt force trauma to his head and chest.

Petty agreed that the evidence the Commonwealth proffered was accurate. After considering the evidence and Petty's pleas, the trial court convicted Petty of felony hit and run and reckless driving and ordered the preparation of a presentence report.

At sentencing, the defense noted several corrections to the presentence investigation report, which the trial court made before making it part of the record. Petty introduced a letter from Sisler Counseling Service and attached it to the presentence report. The court also noted that it had reviewed the previously filed victim impact statements.[2] Townsend's family gave victim impact testimony and described him as a playful young man who loved his friends and family, playing basketball, and taking pictures. When J.H., a nine-year-old witness, became nervous and could not read his prepared victim impact statement, the court, with defense counsel's consent, read it into evidence. The Commonwealth then played a photo montage of Townsend, also without objection.

Charles Oakes, Petty's fiancé, testified that he and Petty live together with Petty's seven-year-old daughter. Since the accident, Petty has not driven, so Oakes does all the driving for the family. Additionally, Petty became depressed because of the accident and now meets with a counselor.

The Commonwealth argued that when Petty drove through the congested area, it was apparent that a large event was taking place. Petty became impatient while waiting for cars to turn, and rather than wait in line, she sped around the traffic. As she did, she lost control of her vehicle and hit a group of young men, gravely injuring Stone and ultimately killing Townsend. Instead of stopping to check on the men her vehicle struck, however, Petty drove away. She did not contact

---

[2] These included statements from Townsend's brother, Zyccheaus D. Motley, his father, Infinite N. Allah, and a nine year old who thought of Townsend as an "uncle," J.H. (in order to protect the identity of the minor, we refer to him using initials).

the police; rather, it was the police who located and contacted her the next day. The Commonwealth argued that the sentencing guidelines did not adequately give weight to the underlying offense, reckless driving. Consequently, the Commonwealth asked the trial court to depart upward from the guidelines.

Petty argued that the evidence at the crash site proved that she attempted to stop, and when investigators measured the brake marks, they estimated that Petty was traveling at a speed of twenty-five to twenty-seven miles per hour, well below the posted speed limit of fifty-five miles per hour. The police found spent cartridges at the site of the accident, corroborating Petty's claim that she heard gunshots as she left the scene. Petty acknowledged that she should have contacted police, but she emphasized that she did not hide the car or attempt to avoid detection. When officers arrived the next day, she cooperated fully with their investigation. Due to anxiety and depression caused by the accident, Petty has not driven a car in two years and has begun counseling. She also articulated her extensive medical history that includes twelve hip and back surgeries. Petty contended that her failure to report the accident was not what caused Townsend's death and asked the court to sentence her to the maximum of twelve months for reckless driving and an active sentence of four months for hit and run.

The trial court stated that the testimony and photographs were "exceedingly helpful" and "painted a picture" of Townsend. The trial court observed that "[t]his is an exceedingly sad case for everyone," and noted that the sentencing guidelines give points to account for victim injury but assign no points for death. The trial court found that Petty's impatience, inattentiveness, and recklessness, while driving on a small road with numerous people in clear view, caused the accident. Moreover, she "completely avoided responsibility" by fleeing the scene after gravely injuring people. The trial court emphasized that, even if someone had fired a weapon at her vehicle,

Petty should have informed the police about the accident immediately afterwards, but Petty made no effort to contact law enforcement.

The trial court recognized that Petty experienced trauma and that she was receiving counseling because of the accident but remarked that Petty's own actions caused the trauma. It also observed that Petty did not start counseling until seventeen days before the sentencing hearing, when the accident had occurred over a year-and-a-half before. The trial court noted that the sentencing range was up to ten years for the felony hit and run and up to twelve months for the reckless driving charge. In allocution, Petty apologized to the family and stated she never intended to hurt anybody.

The trial court could not "imagine frankly a more serious case of hit and run and reckless driving," and imposed ten years of active incarceration on the felony hit and run. On the reckless driving the court imposed twelve months in jail. The trial court did not suspend any of the sentence. The trial court denied Petty's motion to modify the sentence and declined to impose restitution. This appeal follows.

## II. ANALYSIS

Petty contends that the trial court erred in how it arrived at the decision to impose the statutory maximum sentence for both convictions. She maintains that during the sentencing hearing, the trial court considered facts not in evidence, failed to consider her mitigating evidence, exhibited inappropriate bias, and decided her sentence prior to allocution. She also contends that the trial court "ignored the purpose of the discretionary sentencing guidelines" and the goal of comparative proportionality with sentences imposed in other cases. We address each of Petty's arguments below.

## A. *Standard of Review*

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). The scope of this Court's review of an imposed sentence is well-established: "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Du*, 292 Va. at 565).

It is within the trial court's purview to weigh the mitigating evidence at sentencing. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (alteration in original) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)).

## B. *Considering Facts Not in Evidence*

Petty argues that the trial court considered a fact not in evidence when it imposed her sentence. Petty contends that she did not know that the victims were gravely injured when she left

the scene, and because there was no evidence she observed the victims' injuries, the trial court improperly considered the severity of the injuries in deciding her sentence.

"[W]hen an irrelevant or improper factor is considered and given significant weight," the court commits an abuse of discretion. *Id.* (quoting *Kern*, 738 F.2d at 970). Here, Petty pled guilty to felony hit and run, thus acknowledging that she was the driver of the vehicle and that she caused the accident where Stone was injured, and Townsend killed. Given that Petty entered a plea of guilty to felony hit and run, she necessarily admitted that she knew or should have known that she inflicted injuries on the individuals she struck. The trial court's inference that Petty knew or should have known she injured Townsend and Stone was appropriate. Therefore, the consideration of that fact was not an abuse of discretion.

### C. *Failure to Consider Mitigating Evidence*

Petty further argues that the trial court ignored her mitigating evidence. Petty presented documentation that she had been receiving counseling because of the accident and has an extensive medical history. Petty's fiancé testified that she has not driven in the two years since the accident. Petty also asserts that the trial court also ignored her "success" on bond and the fact that this was her first felony conviction.

Petty emphasizes that she attempted to avoid the accident as indicated by the brake marks left at the scene. Further, the police estimated she was only traveling at twenty-five to twenty-seven miles per hour, which was well below the posted speed limit of fifty-five miles per hour. After the accident, the police found evidence that gunshots were fired at the scene, corroborating Petty's explanation that she heard gunshots. Finally, Petty notes that the Commonwealth did not charge her with manslaughter because it could not prove the necessary culpability to support that crime. She argues that the trial court failed to consider this mitigating evidence properly and, thus, it abused its discretion.

The record does not support Petty's claim that the trial court did not consider her mitigating evidence when determining her sentence. Before pronouncing sentence, the trial court acknowledged that the accident traumatized Petty and that she was receiving counseling. Balanced against Petty's mitigating evidence, however, was Townsend's death, for which the trial court felt the guidelines did not adequately account. In weighing the evidence, the trial court also noted the gap in time between the accident, the indictments, and Petty's first counseling session, concluding that Petty was "not stepping up to the plate." Thus, the record reflects that the trial court considered all the evidence presented, both mitigating and aggravating, before it imposed the challenged sentences.

## D. *Trial Court Bias*

Petty contends that the trial court displayed an inappropriate bias, providing a litany of examples she believes evince that bias. First, during argument at sentencing, the trial court interrupted defense counsel's argument concerning the gunfire to ask "were the gunshots fired as she was leaving? Do we know?" Petty argues that "[t]he implication from this question, that an illegal act[, the firing of a weapon,] was somehow justified, exhibits inappropriate bias on behalf of the trial court." Second, Petty contends that the trial court displayed inappropriate bias when the court read the statement of a child witness who became too nervous to read his prepared statement. In addition, when the trial court viewed a video montage, including a photo of Townsend getting a haircut as a child, "the trial court interjected to comment, 'That's a lot of hair gone.'" Finally, when articulating its reasoning for Petty's sentence, the trial court referred to the deceased as "grandboy," a nickname from his grandmother. Petty argues that all these comments were inappropriate and demonstrate that the trial court improperly endeared itself to the family of the deceased.

Petty also argues that the trial court inappropriately provided legal advice to Townsend's family. At sentencing and at the hearing on Petty's motion to modify her sentence, the trial court

mentioned that Townsend's family members could still pursue a civil claim if they filed it before the statute of limitations ran. These comments, Petty argues, amounted to the trial court giving the victim's family legal advice and were inappropriate. "Mentioning civil remedies prior to imposition of sentence or ordering restitution suggests that the court had decided the sentence prior to hearing evidence," Petty asserts. Finally, Petty concludes that "[t]he totality of the trial record reveals the trial court's inappropriate bias in determining [her] sentences, and such bias is an improper factor in a fair sentencing."

While Petty's recitation of what occurred in the trial court is accurate, at no point during any of these instances did Petty object to the trial court's remarks (and in the case of the trial court reading J.H.'s statement, she agreed to it). Accordingly, she failed to preserve these alleged errors for review. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."); *Humbert v. Commonwealth*, 29 Va. App. 783, 791 (1999) (emphasizing the applicability of Rule 5A:18 not only to "rulings," but to a trial court's "improper remarks"). "The purpose of th[e] contemporaneous objection requirement [in Rule 5A:18] is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). If a party fails to timely and specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009).

Here, Petty failed to specifically object to the statements and comments she challenges on appeal. Petty does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*). For these reasons, Petty failed to preserve these arguments for appellate review and therefore, pursuant to Rule 5A:18, they are waived on appeal.

### E. *Failure to Consider Allocution*

Petty next argues that the trial court decided the sentence prior to her allocution. Only after the trial court explained its reasons for imposing the statutory maximum sentences, did the court permit Petty to make an allocution. This, she argues, denied her of a meaningful allocution because the trial court had already decided the sentence it planned to impose.

"Before pronouncing the sentence, the court shall inquire of the accused if he desires to make a statement and if he desires to advance any reason why judgment should not be pronounced against him." Code § 19.2-298. Here, the trial court permitted Petty to allocate before the trial court announced her sentence. Therefore, Petty was not denied her right to allocution and the trial court did not abuse its discretion.

### F. *Sentencing Guidelines and Proportionality*

Finally, Petty argues the trial court ignored the purpose of discretionary sentencing guidelines and the comparable sentencing data presented by defense counsel. During the hearing on Petty's motion to modify the sentence, the trial court declared that "[i]t makes no difference to me what someone else in another part of the state or the circuit got for a similar charge." Petty argues that the trial court erred not only by imposing the maximum sentences provided by the legislature, but in how it arrived at the sentences. Petty provided the trial court with sentencing data from recent sentences within the same judicial circuit for the same or more aggravated offenses. Petty notes that the only defendants to receive the same length of sentence she

received were convicted of more serious offenses. This information, she argues, illustrates that she received an unjustly disproportionate sentence.

The standard sentencing guidelines "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993) (quoting *Hudson v. Commonwealth*, 10 Va. App. 158, 161 (1990)). "[W]hen a statute prescribes a maximum imprisonment penalty, and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Du*, 292 Va. at 564 (quoting *Alston*, 274 Va. at 771-72). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason*, 69 Va. App. at 99 (quoting *Du*, 292 Va. at 565). Here, Petty's sentences were within the ranges set by the legislature. *See* Code §§ 46.2-894 and 46.2-852 (criminalizing hit and run and reckless driving); Code §§ 18.2-10(e) and 46.2-894 (setting forth the punishments for those offenses).[3] Accordingly, we find no abuse of discretion in the trial court's sentencing decision.

### III. CONCLUSION

For the foregoing reasons, the circuit court's imposed sentences are affirmed.

*Affirmed*.

---

[3] To the extent that Petty argues that her sentence was disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (*per curiam*)).