COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Chafin and Senior Judge Clements
Argued at Lexington, Virginia

**PUBLISHED**

FRANKLIN LEE THOMASON, JR.

OPINION BY
v.        Record No. 1290-17-3        JUDGE ROBERT J. HUMPHREYS
                                                           JULY 17, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

Jim D. Childress, III (Childress Law Firm PC, on brief), for
appellant.

Rachel L. Yates, Assistant Attorney General (Mark R Herring,
Attorney General; Craig W. Stallard, Assistant Attorney General, on
brief), for appellee.

Franklin Lee Thomason, Jr. ("Thomason") appeals the judgment of the Circuit Court of

Campbell County ("circuit court") denying his motion to withdraw his January 18, 2017 guilty

pleas to second-degree murder, possession of a firearm by a convicted felon, and use of a firearm

in the commission of a felony. Thomason argues the circuit court abused its discretion by

denying his pre-sentencing motion to withdraw his guilty pleas and by sentencing him too

harshly, given proper consideration of the facts.

## I.  BACKGROUND

On January 24, 2016, Thomason was at his home with his girlfriend and two guests,

D.W. Grubbs ("D.W."), and D.W.'s wife Amy Grubbs ("Amy"). The trio began drinking

alcohol in the kitchen. While drinking, D.W. showed Thomason a gun he had stolen and

attempted to trade it to Thomason for methamphetamine. D.W. left the room temporarily,

leaving the stolen gun on the table. Thomason and Amy continued to consume alcohol until

Thomason "snapped," pushing Amy up against the clothes dryer while holding a knife to her throat and demanding to know "what she took." When Amy replied that she did not know what Thomason was talking about, Thomason backed off, sitting down at the table again, and apologized. Thomason told Amy to go get D.W. When D.W. subsequently entered the room, Thomason picked up the gun off the table and pointed it at Amy's head, threatening to "blow [her] away" unless D.W. told Thomason what he had taken. D.W. likewise responded that he did not know what Thomason was talking about. Thomason then turned the gun on D.W., shooting him between the eyes, killing him. Amy called the police. When police arrived, Thomason made statements regretting that he had not fled or killed Amy as well. Thomason made additional conflicting statements, claiming that he had committed manslaughter but not murder and that the gun had gone off accidentally.

Thomason pleaded guilty pursuant to a written plea agreement with the Commonwealth. However, on the day of the sentencing hearing, April 13, 2017, Thomason learned of an additional witness, Andrew Palaisa ("Palaisa"), who had discussed the incident with Amy. Thomason moved for a continuance, which was granted. On May 19, 2017, Thomason moved to withdraw his guilty pleas, arguing that the existence of exculpatory evidence provided by Palaisa constituted a material mistake of fact at the time of his plea. A hearing regarding this motion occurred on July 27, 2017, during which Palaisa testified that he had spoken with Amy and that she had relayed two different versions of D.W.'s death to him, one which substantially accorded with the facts as laid out by the Commonwealth, and another in which D.W. threatened to rob Thomason leading to an altercation during which the gun discharged when Thomason claimed he had no drugs. Palaisa could not recall when he talked to Amy, or whether he had first discussed the incident with Amy or Thomason, conceding "I was on a lot of drugs at that time." The circuit court denied Thomason's motion to withdraw his guilty pleas, finding Palaisa "clearly not

very credible" and his testimony insignificant when compared to the other evidence and Thomason's own statements. The circuit court also specifically noted that, pursuant to the plea agreement, the Commonwealth had *nolle prosequied* one charge and reduced another, and would be prejudiced by allowing Thomason to withdraw his plea. The circuit court also held that Thomason was bound to his plea agreement by contract principles.

The circuit court proceeded with sentencing, imposing forty years' incarceration, with eighteen suspended for the murder charge, with eight years' incarceration for the gun charges, totaling thirty years' incarceration. This appeal follows.

## II.  ANALYSIS

### A.  Standard of Review

Though Code § 19.2-296 governs the withdrawal of a guilty plea, it does not provide a standard for a *pre-sentencing* guilty plea withdrawal. Without such guidance, a trial court's decision on the pre-sentencing withdrawal of a guilty plea is reviewed under an abuse of discretion standard, with insight provided by the Virginia Supreme Court's "seminal" case on the matter, Parris v. Commonwealth, 189 Va. 321, 52 S.E.2d 872 (1949). See Justus v. Commonwealth, 274 Va. 143, 152, 645 S.E.2d 284, 288 (2007) ("Parris is the seminal statement of the law . . . [and] remains the standard for consideration and review of a motion made under the statutory provision.").

Parris holds that, generally,

> the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason;

- 3 -

or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury.

Parris, 189 Va. at 325, 52 S.E.2d at 874. Justus further expounded this standard by stating "the motion should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case." Justus, 274 Va. at 154, 645 S.E.2d at 289. "Therefore, under Parris, a defendant who wishes to withdraw his guilty plea must show that his motion is made in good faith and must proffer that he has a reasonable basis for contesting his guilt." Ramsey v. Commonwealth, 65 Va. App. 593, 600, 779 S.E.2d 241, 245 (2015).

### B. Whether Thomason Should Have Been Allowed to Withdraw his Guilty Plea

As an initial matter, we note that Code § 19.2-296 applies to the withdrawal of a guilty *plea* and is silent on its impact when the guilty plea is part of a plea agreement. Our Supreme Court has held that "general principles of contract law apply to plea agreements and the law in effect when a contract is made becomes a part of the contract as though incorporated therein." Wright v. Commonwealth, 275 Va. 77, 79, 655 S.E.2d 7, 8 (2008). Thus, the pre-sentencing withdrawal of any guilty plea pursuant to Code § 19.2-296 must also consider contract principles and the agreement Thomason and the Commonwealth entered into.

In doing so, we note initially that Thomason's plea bargain contained an express waiver of his right to withdraw his pleas, but that Thomason was not questioned about his understanding of the waiver provision during the plea colloquy. Though the Commonwealth urges that we might easily dispense with his appeal through this waiver, Griffin v. Commonwealth, 65 Va. App. 714, 780 S.E.2d 909 (2016), the previous case in which we found a valid waiver, featured the trial court expressly questioning the defendant about the waiver provision. See id. at 719, 780 S.E.2d at 911-12. Griffin represents the first case to directly address waiver of the right to withdraw a guilty plea, and in doing so only dealt with an express waiver. See id. at 718-19,

- 4 -

780 S.E.2d at 911. Therefore, to decide this case on its narrowest and best grounds we will address the propriety of permitting withdrawal of the guilty plea itself rather than whether Thomason waived his right to do so.

Thomason argues that the Parris standard was not satisfied by the circuit court finding Palaisa incredible, arguing that mere incredibility is insufficient to dismiss the reasonable defense requirement described in Justus. Precedent from both our Supreme Court and this Court, however, demonstrate the opposite. The reasonable defense requirement, as interpreted by this Court, "is one based upon a proposition of law, . . . or one supported by credible testimony, supported by affidavit." Williams v. Commonwealth, 59 Va. App. 238, 249, 717 S.E.2d 837, 842 (2011) (citing Justus, 274 Va. at 155, 645 S.E.2d at 289; Parris, 189 Va. at 324, 52 S.E.2d at 873). In Williams, this Court upheld denial of a motion to withdraw a guilty plea based solely on the defendant's testimony conflicting with that of his victim. We stated that to allow such a withdrawal would "raise a bare challenge to the credibility of a victim or witness to that standard, one 'sustained by proofs,' necessary to permit the withdrawal of a plea of guilty." Id. While the testimony in this case is that of a third party, and conflicts with that of a witness, rather than a victim, the rationale of the rule expressed in Williams is equally applicable—potential impeachment of witness testimony does not satisfy the Parris standard.

Thomason attempts to differentiate his case from Williams, by stating matter-of-factly that Palaisa's testimony impeaches Amy and that impeachment evidence is exculpatory, and that the issue before us is unlike Williams because Palaisa's testimony shows the inconsistent statement of Amy. However, whether newly discovered impeachment evidence is potentially exculpatory pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1973), and their progeny is not the proper standard for setting aside a guilty plea, much less one that is part of a plea agreement. Williams explicitly equates victim and witness

testimony in dismissing a mere conflict of testimony as insufficient. Without more, Thomason has not established a reasonable defense as contemplated by Parris, Justus, and their progeny.

We also consider an additional factor not explicitly addressed in Parris or Justus, but required when a guilty plea is part of a plea agreement. That factor is prejudice to the Commonwealth resulting from withdrawal of a guilty plea, when it has honored its contractual obligations under the plea agreement and a defendant seeks to withdraw from his. Recently, our Supreme Court "specifically recognize[d] prejudice to the Commonwealth as a relevant factor that should be considered when reviewing a motion to withdraw a guilty plea." Small v. Commonwealth, 292 Va. 292, 298, 788 S.E.2d 702, 705 (2016).

Thomason concedes the existence and importance of this factor, but argues that the Commonwealth would not be prejudiced by allowing him to withdraw his plea because "[t]he Commonwealth would have to expend time to prepare for trial if the pleas of guilty had been withdrawn, but it would have had to expend those resources anyway." The question of prejudice against the Commonwealth is one of fairness rather than economics or efficiency. We have stated that prejudice sufficient to prevent withdrawal of a guilty plea

> may exist where the record reflects that the Commonwealth has partially or fully fulfilled its obligations in a plea agreement by dismissing or amending charges or where the record supports a factual finding by the trial court that the purpose of the motion is merely to cause undue delay in the administration of justice or demonstrates other bad faith or misconduct by or on behalf of the defendant.

Hubbard v. Commonwealth, 60 Va. App. 200, 211 n.4, 725 S.E.2d 163, 168 n.4 (2012).

Here, the Commonwealth both reduced and *nolle prosequied* various charges in reliance on Thomason's guilty plea. Further, at the time of the sentencing hearing the Commonwealth proffered that it would be required to put two witnesses on the stand to rebut Palaisa's testimony, neither of which it could then locate. Significantly, Parris and Justus dealt with straightforward

guilty pleas, not plea agreements where contract principles and remedies apply. Our observation in Hubbard cautioned against conflating the two in applying the provisions of Code § 19.2-296.

As noted above, a knowing, voluntary, and intelligently entered into plea agreement involves concessions and negotiation by both parties, and the resulting contract binds both parties. See Wright, 275 Va. at 82 n.5, 655 S.E.2d at 10 n.5 (listing cases from multiple jurisdictions applying contract principles to plea agreements).

The circuit court correctly noted this principle, it found the Commonwealth would be prejudiced by permitting Thomason to abrogate his obligation under the plea agreement, and we do not find it was an abuse of discretion for the circuit court to so hold.

### C. Whether the Circuit Court Sentenced Thomason Too Harshly

Thomason's second assignment of error contends that the circuit court abused its discretion in sentencing him too harshly because it failed to give proper consideration to certain facts, namely that D.W. brought the gun into the house and that appellant had done "good deeds" to D.W. before killing him. Thomason concedes that Virginia law precludes appellate review of a sentence which is within statutory limitations, but claims that such a limitation is inconsistent with the Eighth Amendment to the United States Constitution, which Thomason asserts imposes a proportionality standard on punishment. Thomason cites Solem v. Helm, 463 U.S. 277 (1983), which held "as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted." Id. at 290. Thomason argues that this general principle, coupled with additional cases which have "breathed new life" into proportionality, means that the sentence in this case is constitutionally disproportionate.

Thomason does not suggest what level of his hospitality toward D.W. the circuit court should have found outweighed committing his murder. Neither does he explain why a reasonable

- 7 -

jurist might not instead view the murder of a guest as an aggravating rather than mitigating factor.[1]

Regardless, while it is true that "no penalty is per se constitutional," id. the United States Supreme Court has also embraced the "general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." Minh Duy Du v. Commonwealth, 292 Va. 555, 565, 790 S.E.2d 493, 499 (2016) (quoting Dorszynski v. United States, 418 U.S. 424, 431 (1974)).  Appellant's sentence was within the statutory range, and our task is complete.

### III.  CONCLUSION

Because the circuit court did not abuse its discretion in refusing to permit Thomason to withdraw his guilty pleas and further, because the circuit court did not abuse its discretion in sentencing Thomason within the statutory range of punishment for the offenses he was convicted of, we conclude that the judgment of the circuit court should be affirmed.

Affirmed.

---

[1] Indeed, Thomason's legal argument is not markedly different from the apocryphal and oft ridiculed example that one who kills his parents deserves sentencing consideration for being an orphan.