COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chaney and Lorish
Argued at Virginia Beach, Virginia


TA'KUAN KEONTAY BINGHAM, A/K/A
  TAKUAN KEONTAY BINGHAM

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1396-21-1                      JUDGE LISA M. LORISH
                                                    MAY 17, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
Jeffrey W. Shaw, Judge

        Charles E. Haden for appellant.

        Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
        Attorney General, on brief), for appellee.


        Ta'Kuan Keontay Bingham pled guilty to arson in violation of Code § 18.2-77 and three

counts of animal cruelty in violation of Code § 3.2-6570(F).  He then sought to withdraw his guilty

pleas and asked to proceed to trial.  The trial court held a hearing to consider Bingham's motion.

Because there was significant evidence against him and Bingham did not make a *prima facie*

showing of any reasonable defense to the charges, we affirm the trial court's decision to deny his

motion.

BACKGROUND[1]

        A grand jury indicted Bingham on one count of arson in violation of Code § 18.2-77 and

three counts of animal cruelty in violation of Code § 3.2-6570(F).  After Bingham confirmed his

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We state the facts "in the light most favorable to the Commonwealth, the prevailing party
at trial."  *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292
Va. 380, 381 (2016)).

intent to plead guilty to the charges, the trial court asked him questions about his decision to plead guilty (known as a plea colloquy) and Bingham affirmed that he and his attorney had discussed the charges, their elements, what the Commonwealth needed to prove, and any possible defenses. Bingham stated that he was "freely and voluntarily" pleading guilty and that he was pleading guilty because he was in fact guilty, and he confirmed that he understood the maximum sentences for the offenses. Bingham stated that he was not pleading guilty in response to any force, threat, or promise and told the court that he understood each of the court's questions and had no questions of his own. The trial court accepted Bingham's guilty pleas, finding that they were made freely, intelligently, and voluntarily and that Bingham understood the nature of the charges against him and the consequences of pleading guilty.

The Commonwealth then proffered the evidence it expected to present at trial, which included the following. In January 2021, Bingham lived with Renee McLaughlin and her daughter in Gloucester County. Renee owned a Great Pyrenees dog, a Dachshund dog, and a cat.

On the morning of January 19, 2021, McLaughlin left the house around 4:00 a.m. to attend work. McLaughlin believed that her daughter was the only other person in the house, but Bingham was there, too. At 9:30 a.m., McLaughlin's daughter left for a doctor's appointment, leaving only Bingham in the house. The Great Pyrenees and the cat were allowed to roam the house, while the Dachshund was fastened in her crate.

McLaughlin returned home around 3:00 p.m. to find her house on fire. She ran to her backyard fence, which was open, although she usually kept it closed and locked. McLaughlin opened the back door, but she could not get in because of the smoke.

W.L. Johnston of the Gloucester Fire Department arrived on the scene. He found the Dachshund deceased in her crate and the cat deceased in the master bedroom. The Great Pyrenees

was treated for smoke inhalation but was in "pretty bad shape" and ultimately euthanized. The necropsies for the Dachshund and the cat revealed that they died from smoke inhalation.

Two days later, Investigator Graham of the Gloucester Sheriff's Department interviewed Bingham about the fire. Bingham at first denied any knowledge about the fire, claiming that he went to work after McLaughlin's daughter left the house. Bingham also told Graham that McLaughlin had prior issues with her electrical system and speculated that the fire was probably electrical.

Special Agent Mark Guyer with the Virginia State Police performed an investigation of the fire's cause and origin. He ruled out all but an intentional cause for the fire.

The police arrested Bingham ten days after the fire. During his interview, he at first denied, once again, having any knowledge about the cause of the fire. But as Bingham kept talking to the police, he admitted that on the night before the fire, he slept at McLaughlin's house and had an argument with her. Bingham told the police that he was angry with McLaughlin and "wanted some type of retaliation or vengeance against [her]." He explained that after McLaughlin's daughter left the house, he took a paper towel to McLaughlin's bedroom, set it on fire, and put it on her bed. Bingham told the police that the fire grew out of control. He claimed that he opened the back door and got both dogs outside, but that he could not find the cat.

At the end of the Commonwealth's proffer of evidence at the plea hearing, Bingham's counsel added some clarifying information for the court. Bingham explained that he told the police that the cat was on the bed when he set the fire. He stated that the cat caught fire and began to run around the room. He said that he "attempted to catch the cat to put the fire out but the cat continued to run around until he heard it stop whining." Bingham also said he told the police that he left the back door open for the dogs, but that they did not leave the house. Finally, Bingham explained that he had attempted to extinguish the fire but it spread too quickly. He told the trial court that "he set

the fire but it was not [done] intentionally." Based on his guilty pleas and the Commonwealth's proffer, the trial court convicted Bingham on all charges.

After pleading guilty, Bingham sent two *ex parte* letters to the trial court, stating that he pled guilty because his attorney told him he would receive time served. Bingham asked the court for new legal representation and for a new trial so he could prove his innocence. He stated that he had no reason to burn his own property or risk his freedom. He also said that around the time of the fire he was with Ronnie Rose and Danielle Rose and that they would testify on his behalf.

Bingham's attorney then moved to withdraw as counsel. The trial court held a hearing on the motion to withdraw where Bingham expressed his dissatisfaction with his counsel, arguing that she did not represent him to the best of her abilities. Bingham also told the court his attorney would not consider exculpatory evidence and that she persuaded him to plead guilty by telling him that the trial court would sentence him to time served. The trial court granted the motion to withdraw and appointed new legal representation for Bingham.

Before sentencing, Bingham's new attorney made a motion to withdraw his guilty pleas. At a hearing on this motion, Bingham testified that he only pled guilty based on his former counsel's legal advice that if he pled guilty he would be sentenced to time served. Bingham then testified about his expected defenses at trial. He explained that the Commonwealth's argument was "dumb" and it did not make sense that "because somebody said something to you that you don't like, you set a house on fire, burning up your belongings and things that benefit you in your future." Bingham added that he would not burn down a house to kill innocent animals because of his argument with Renee and that he had other places he could have stayed. Bingham did not deny making his prior confession to the police but testified he did not remember it because he was under the influence of drugs at the time. At no point did Bingham mention Ronnie Rose and Danielle Rose or any alibi defense.

The trial court denied Bingham's motion to withdraw his guilty pleas, finding it was not made in good faith and that Bingham had not provided a reasonable basis to contest his guilty pleas. Bingham was then sentenced to ten years' incarceration on the arson charge and two years' incarceration for each of the animal cruelty charges, all of which would run concurrently. This appeal follows.

ANALYSIS

Bingham argues that the trial court erred by denying his motion to withdraw his guilty pleas. We review the "trial court's decision on the pre-sentencing withdrawal of a guilty plea . . . under an abuse of discretion standard." *Thomason v. Commonwealth*, 69 Va. App. 89, 94 (2018). A defendant may move "to withdraw a plea of guilty . . . before sentence is imposed or imposition of a sentence is suspended." Code § 19.2-296. Under long-standing precedent, "the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place." *Thomason*, 69 Va. App. at 94 (quoting *Parris v. Commonwealth*, 189 Va. 321, 325 (1949)). "[T]he motion should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case." *Id.* (quoting *Justus v. Commonwealth*, 274 Va. 143, 154 (2007)).

"[A] defendant who moves to withdraw a guilty plea *before* sentencing need only show that [1] his motion was made in good faith and [2] premised upon a reasonable basis." *Brown v. Commonwealth*, 297 Va. 295, 299 (2019) (quoting *Velazquez v. Commonwealth*, 292 Va. 603, 616 (2016)). "The first requirement protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court. The second requirement defeats motions to withdraw which would result in an essentially futile trial." *Id.* (quoting *Cobbins v. Commonwealth*, 53 Va. App. 28, 34 (2008)).

We will assume, without deciding, that Bingham's motion was made in good faith, and only consider here whether his motion was "premised upon a reasonable basis." "To establish this basis, the defendant must offer a defense that is 'substantive' and 'reasonable,' not 'merely dilatory or formal.'" *Spencer v. Commonwealth*, 68 Va. App. 183, 187-88 (2017). A reasonable basis must be "sustained by proofs." *Justus*, 274 Va. at 153-54. In determining whether a reasonable basis exists, the trial court does not "evaluate credibility of witnesses, nor [ ] determine whether the proffered defense will be successful. The role of the trial court is to determine whether the defendant has made a *prima facie* showing of a reasonable defense." *Hernandez v. Commonwealth*, 67 Va. App. 67, 79 (2016). "[I]f the defendant proffers sufficient facts to support the asserted defense, such that it is reasonable to present it to the judge or jury trying the case, the trial court should grant the motion." *Id.*; *see, e.g.*, *Bottoms v. Commonwealth*, 281 Va. 23 (2011) (trial court should have granted motion to withdraw guilty plea when defendant's proffered facts supported asserted defense).[2]

Here, the trial court did not err in finding that Bingham failed to establish a reasonable basis for withdrawing his guilty pleas. In arguing his motion, Bingham explained that he only pled guilty because he thought that he would receive time served. And he testified that it would be "dumb" to set the house on fire as the result of an argument because the house contained his own property. He also said that he would not kill innocent animals because he was angry with someone and testified that he lacked motive to commit these crimes because he had other places he could have stayed. While Bingham's earlier *pro se* letter to the court mentioned Ronnie Rose and Danielle Rose as

---

[2] We note that the existence of a viable defense alone is not enough to set aside a guilty plea. *Pritchett v. Commonwealth*, 61 Va. App. 777, 788 (2013) ("a defendant could plead guilty with full knowledge of an available defense to gain delay or for some other tactical reason, and then set the plea aside simply by tendering a defense to the charges"). That is why a trial court must also consider whether the motion to withdraw was made in good faith.

potential alibi witnesses, neither Bingham nor his counsel so much as mentioned these individuals during the hearing, let alone provided a proffer of what they would testify to at trial.

When asked about his earlier confession to the police, Bingham did not deny the confession but claimed he did not remember it because he was under the influence of drugs when he spoke to the officer. Bingham did not explain why he failed to contest the Commonwealth's proffer of evidence at his plea hearing (which included his confession), or why Bingham's prior counsel had in fact corrected the Commonwealth's evidence by providing more precise information about Bingham's confession to the police. Specifically, his counsel added that Bingham told the police that the cat was on the bed when he set the fire and that the cat itself then caught on fire and ran around the room until it "stopped whining." In addition, his counsel said Bingham explained that he tried to extinguish the fire and that he left the back door open for the dogs to escape.

We find no error with the trial court's conclusion that Bingham failed to make a *prima facie* showing of a reasonable defense. The trial court provided Bingham the opportunity to call witnesses, submit affidavits, or proffer evidence, but he failed to do so. The record supports the trial court's finding that Bingham failed to offer a reasonable basis for moving to withdraw his pleas.

CONCLUSION

In sum, the record supports the trial court's decision to deny Bingham's motion to withdraw his guilty pleas. For these reasons, the trial court's judgment is affirmed.

*Affirmed.*