UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Senior Judges Clements, Haley and Petty


MICHAEL ALAN HUMPHRIES, II

                                                    MEMORANDUM OPINION*
v.      Record No. 1310-21-2                              PER CURIAM
                                                     NOVEMBER 29, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzen, Judge

(Michael J. Hallahan, II, on brief), for appellant.  Appellant
submitting on brief.

(Jason S. Miyares, Attorney General; Matthew P. Dullaghan, Senior
Assistant Attorney General, on brief), for appellee.  Appellee
submitting on brief.


        Counsel for Michael Alan Humphries, II, filed a brief on his behalf accompanied by a

motion for leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967).  A

copy of the brief has been furnished to Humphries with sufficient time for him to raise any matter

that he chooses.  Humphries has not filed any *pro se* supplemental pleadings.  After examining

the pleadings and record in this case, the panel has determined the case to be wholly frivolous

and the trial court's judgment is affirmed.

        Under a written plea agreement, Humphries pleaded guilty to first-degree murder and use of

a firearm in the commission of a felony.  Consistent with the terms of the plea agreement, the trial

court sentenced Humphries to life imprisonment plus three years of incarceration with all but

thirty-eight years and seven months suspended.  On appeal, Humphries argues that the trial court

abused its sentencing discretion.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Before accepting Humphries's pleas, the trial court conducted a thorough colloquy with him to ensure they were entered freely and voluntarily. Humphries confirmed that he had discussed the charges and their elements with his attorney and was pleading guilty because he was, "in fact, guilty." Humphries understood that the maximum punishment for the offenses was life imprisonment plus three years and had discussed the sentencing guidelines with his attorney. Humphries had read, understood, and signed the written plea agreement. He also understood that under the plea agreement, the trial court could not impose an active sentence above the high-end of the discretionary sentencing guidelines's recommended range. The trial court accepted Humphries's pleas, finding that he had entered them freely and voluntarily.

The Commonwealth proffered that around 7:00 a.m. on February 13, 2018, surveillance video recorded Alistair Smith as he entered a laundromat. Smith left after moving his laundry into a dryer but returned shortly before 9:00 a.m. and sat in a chair while looking at his cell phone. About two minutes later, Humphries arrived at the laundromat and looked at Smith through the window. Humphries then retrieved a bolt action rifle from his car, entered the laundromat, and shot Smith from seven feet away. The large-caliber rifle bullet travelled through Smith's arm and chest, "lift[ed] him . . . out of the seat," and "threw him on[to] the floor." Humphries then walked around a table and shot Smith twice more in the head.

Humphries returned to his car, placed the rifle in the trunk, and drove away. Twenty minutes later, two women found Smith's body and called 911.

When Humphries arrived home, he told his mother that he "had shot someone." His mother drove him to the magistrate's office, where he told police that he shot Smith after seeing a Facebook message on his wife's phone that "led him to believe" they were having an affair. A forensic scientist explained that the rifle found in Humphries's car "was the largest caliber gun that she had ever" tested and typically was used "in big game hunting." Based on Humphries's pleas and the proffered evidence, the trial court convicted Humphries of first-degree murder and use of a firearm in the commission of a felony and continued the matter for sentencing.

At the sentencing hearing, the trial court reviewed the discretionary sentencing guidelines, which recommended a sentence between twenty-three years and two months' incarceration and thirty-eight years and seven months' incarceration, with a midpoint of thirty years and ten months. The Commonwealth introduced numerous photographs taken at the laundromat after the shooting. The pictures depicted Smith's head and the gruesome scene left by Humphries's actions. The Commonwealth also introduced a sixteen second video from the surveillance camera that depicted Humphries shooting Smith three times.

Chess Maxwell, who served with Smith in the Army, testified that Smith was "an extraordinary and rare person" who had been "a valued asset in any platoon." Maxwell recounted how Smith had impacted his life positively and lamented that he was killed in a "senseless" act of cowardice. Jennifer Lee, Smith's fiancée, similarly testified that Smith was "an amazing father to [their] daughter" and a "loving man." Their daughter missed Smith, told him "good morning and good night" every day, "and even blows kisses to him." Lee was taking medication to address her PTSD, extreme anxiety, and depression and asked the trial court to impose "the maximum penalty."

Humphries argued that although the plea agreement "capped" his sentence at the high-end of the sentencing guidelines, imposing thirty-eight years and seven months' incarceration would equate to a life sentence because he would not be released until his mid-seventies. Accordingly, he asked the trial court to sentence him at the midpoint of the guidelines. He emphasized his lack of criminal history and argued that he had worked many years as a "good employee." He was married with several children and had "reacted inappropriately" after learning that Smith had an affair with his wife. Humphries acknowledged the grisly scene but argued that all first-degree murder cases are "nasty" and "heinous," a circumstance contemplated by the guidelines.

The Commonwealth argued that nothing mitigated the offenses. Humphries had used a large caliber rifle to "blow[] up" Smith's head. The Commonwealth asserted that Humphries displayed no heat of passion or emotion in the surveillance video. Instead, he calmly "carried out" a "death sentence." The Commonwealth emphasized that every person who responded to the laundromat had to witness the gruesome results of Humphries's actions.

In allocution, Humphries recounted incidents in which he believed Smith had come to Humphries's house at night. When Humphries asked his wife about them, she told him not to worry. Humphries also recalled that his young daughter started manifesting behavior that led him to believe she might have been "molested." When he asked his wife about the behavior, she told him he was being paranoid. Humphries admitted that, on the day of the murder, he followed Smith to the laundromat and entered with his rifle. He claimed that he intended to confront Smith but the rifle "went off" when he "leveled" it. Once it went off, Humphries determined "to do" what he "said [he] was going to do." Humphries lamented for his children and stated that he was unaware of Smith's fiancée and daughter. Humphries apologized and claimed he "never wanted" Smith to die.

The trial court considered Humphries's lack of criminal record, allocution, and belief that Smith had had an affair with his wife. The trial court found that Humphries's life had been "productive" before the murder; he was employed and was "a devoted father." But Humphries had murdered an unsuspecting victim in what the trial court characterized as a premeditated, deliberate "assassination" in "cold blood," using a "high powered" rifle. The court found that Humphries had "destroyed" two families, Smith's and his own. The court concluded that the "mitigating circumstances" did not "outweigh the aggravating circumstances." Accordingly, it sentenced Humphries to a total of thirty-eight years and seven months of active incarceration.

ANALYSIS

Humphries argues that the trial court abused its discretion by imposing the maximum active sentence permitted under the plea agreement. He argues that the trial court "seemed to ignore" the mitigating circumstances because the crime was "quite brutal." He emphasizes that he had "no criminal history" and had "turned himself in" immediately after the shooting, which demonstrated that the murder was "an isolated incident" and he was not a threat to the public. Humphries also stresses that he was employed full time and was married with children. He asserts that he lost his marriage, wife, family, and job, "all thanks to [Smith]."

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va.

at 565). Here, Humphries's sentence was within the sentencing range set by the legislature. *See* Code §§ 18.2-10, 18.2-32, and 18.2-53.1. And it was consistent with the plea agreement.

It was within the trial court's purview to weigh the mitigating evidence Humphries presented, including his lack of criminal history, full-time employment, family circumstances, and surrender to authorities. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

The record demonstrates that the trial court considered the mitigating circumstances Humphries cites on appeal. Indeed, the court expressly found that Humphries had led a "productive" life and been "a devoted father." Balanced against those circumstances, however, was Humphries's premeditated murder of Smith in "cold blood." Using a "high powered" rifle appropriate for large game, Humphries shot Smith at close range as he was doing his laundry. The trial court found that Humphries had "destroyed" two families—Smith's and his own—and expressly found that the "mitigating circumstances" did not "outweigh the aggravating circumstances." Thus, the record does not support Humphries's contention that the trial court "ignored" his mitigating evidence. To the contrary, after considering that evidence, the trial court imposed the sentence that it deemed appropriate—the maximum allowable under the plea agreement. That sentence "does not exceed [the statutory] maximum," and our task is complete. *Id.* at 564; *see also Thomason*, 69 Va. App. at 99 ("Appellant's sentence was within the statutory range, and our task is complete.").

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and grant the motion for leave to withdraw. *Anders*, 386 U.S. at 744. This Court's records shall reflect that Michael Alan Humphries, II, is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed.*