COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Ortiz and Causey

ZANE CHANDLER CHRISTIAN

v.      Record No. 0415-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JANUARY 24, 2023

FROM THE CIRCUIT COURT OF THE CITY OF SALEM
J. Christopher Clemens, Judge

(Bradley R. Thompson; John S. Koehler; Brad Thompson Law PC;
Law Office of James Steele, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Leanna C. Minix, Assistant
Attorney General, on brief), for appellee.

Under a written plea agreement, Zane Chandler Christian was convicted of second-degree

murder, use of a firearm in the commission of a felony, and two counts of maliciously shooting into

an occupied vehicle. The trial court sentenced him to forty-three years of incarceration with

seventeen years suspended. On appeal, Christian argues that the trial court abused its discretion by

sentencing him "well above the mid-range of the sentencing guidelines." He asserts that the trial

court did not properly assess evidence that favored a lower sentence.[1] Accordingly, the trial

court's judgment is affirmed.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] While Christian waived oral argument, appellee did not. However, after examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the dispositive" issue has been "authoritatively decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND[2]

Before accepting Christian's no contest pleas, the trial court conducted a colloquy. During the colloquy, Christian confirmed that he had discussed his charges, their elements, and any possible defenses with his attorney. Christian confirmed that he decided for himself to plead no contest "freely and voluntarily." He confirmed his understanding that by pleading no contest he waived certain constitutional rights, including the rights to a jury trial, to confront the witnesses against him, to remain silent, and to appeal certain decisions of the trial court. Christian confirmed that his written plea agreement did not stipulate an agreed sentence for his offenses. Moreover, he understood the maximum statutory punishment the trial court could impose for each offense.[3]

The Commonwealth proffered that Christian had two children with his estranged wife, E.C., with whom he maintained a "loose" custody agreement.[4] The two frequently met in the "Roanoke area" for "custody exchanges." In November 2020, Christian met E.C. in a grocery store parking lot to return the children to her. E.C. arrived in her vehicle with her boyfriend, Rico Turner, and Turner's son as passengers. Christian was upset because a recent court order increased his child support obligation. He also disapproved of Turner's "involvement" in his children's lives. After E.C. parked next to Christian's car, she and Christian exited their vehicles and spoke to each other while Turner and his son remained in E.C.'s vehicle. After a brief conversation, Christian used a

---

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] Consistent with the plea agreement, the Commonwealth moved to amend "a charge of first degree murder to second degree murder" and to *nolle prosequi* two charges of felony child abuse or neglect.

[4] We refer to Christian's estranged wife by her initials, E.C., rather than her name to protect her privacy.

key to scratch E.C.'s car from the driver's door around its "front end." When he reached the front passenger window, where Turner was sitting, he paused before continuing "around the rear" and returning to where E.C. stood.

Turner exited the vehicle and shoved Christian, causing him to trip and fall to the ground. While Turner backed away, Christian stood up, drew a firearm, and shot Turner three times. One of the bullets pierced Turner's chest and exited his back before entering a nearby vehicle that was occupied by two people. The other two bullets struck Turner's left forearm and leg. Christian retreated to his vehicle but dropped his keys, giving E.C. time to remove the children from his car. An off-duty police officer saw the shooting and called 9-1-1. Police responded within minutes and treated Turner's wounds until an ambulance arrived. Turner was transported to a hospital, where he was pronounced dead.

Immediately after the shooting, Christian fled the scene. He discarded his cell phone to "conceal[] his whereabouts." He stole a white vehicle from a person at gunpoint and attempted to disguise the car by scraping off stickers and changing the license plate. He drove to an "acquaintance['s]" residence in West Virginia. Police arrested Christian that evening and discovered a gun in the white vehicle that "matched" cartridge cases found in the grocery store parking lot.

In an interview with police, Christian admitted to the shooting and stated that there was "no reason" for him to "kill" Turner. When asked if Turner threatened or provoked him, Christian answered that Turner "never previously gave [Christian] a reason to shoot him and he didn't give [Christian] a reason now to shoot him." Christian stated that he wanted to "show" Turner that neither he nor his children would "be taken advantage of."

Following the above proffer, the trial court accepted the plea agreement, convicted Christian of second-degree murder, use of a firearm in the commission of a felony, and two counts of shooting into an occupied vehicle, and continued the matter for sentencing.

At the sentencing hearing, E.C. testified that she has been "living in a nightmare" since the shooting. She testified that her children had been asking questions that "no kid at [their] age should know." E.C.'s four-year-old daughter was traumatized and feared "somebody" would die in any situation involving blood, such as a scraped knee. Her five-year-old son was "in therapy" after seeing "daddy" with a gun and carried guilt "for something that he didn't even do." In addition, about six weeks after the shooting, E.C. gave birth to Turner's daughter. E.C. worked two jobs and struggled to raise her children by herself.

Turner's mother submitted a victim impact statement, describing the loss of her son as "crushing." She fell into a "deep depression" after his death and had "to be on medication just to get through [each] day." She described Turner as an "exceptional dad" with a "big smile and a wonderful, amazing personality that would light up a room, . . . especially around the holidays."

Christian adduced character evidence demonstrating his peaceful disposition. A former colleague of his testified, recounting the four years that they served together in the Marine Corps. The colleague described Christian as "dependable" and a "hard worker" who "love[d] his kids." He testified that Christian was not an "aggressive person" and not a threat to those around him. Christian's father similarly testified that Christian was not "aggressive" and posed no "risk to society." Christian was involved in church and "sporting activities" as a child and was "good-hearted," "likeable," and "honest."

Christian also testified at the sentencing hearing. He explained that, prior to the shooting, he visited his children every other weekend, called them every day, and gave E.C. $600 per month in child support. According to Christian, he "key[ed]" E.C.'s car because he was frustrated over a

- 4 -

recent increase in his child support obligation and as he was returning to his car to "go home," Turner shoved him "from behind." Christian testified that, in response, he "got up and . . . began firing a weapon." He admitted that he should not have "responded like that" but claimed he was "scared" because Turner "had made threats over the phone" and "made an additional threat at the scene that he was going to kill" him. Christian further asserted that he had been diagnosed with bipolar disorder and PTSD after he left the Marine Corps and was taking medication at the time of the shooting.

The Commonwealth asked the trial court to sentence Christian to the maximum statutory punishment for his offenses. The Commonwealth stressed the impact of Turner's death on his fiancée, E.C., mother, children, and everyone who "tried to save [his] life" as he was gasping for breath in the grocery store parking lot. Finally, the Commonwealth argued that the murder occurred in a "public area" near numerous bystanders. In response, Christian asked the trial court to sentence him to the "lower end" of the discretionary sentencing guidelines' recommended range.[5] Christian emphasized his lack of criminal history and candid interview with police after his arrest. He asserted that he had accepted responsibility for his offenses, demonstrated remorse, and was not a risk to society. In allocution, Christian apologized for the "trauma" he caused the "Turner family" and stated that he contemplated the "wrongfulness of [his] actions" each day.

The court found that Christian had "accepted responsibility" and, therefore, "reduce[d] [its] original sentence by about four years." Nevertheless, the court ruled that it would still deviate above the sentencing guidelines because "the facts and circumstances of [the] case require[d] a

_____

[5] The discretionary sentencing guidelines recommended between fourteen years and four months' incarceration and twenty-four years' incarceration, with a midpoint of nineteen years and two months. The trial court reduced the low end of the guidelines to seven years and two months' incarceration upon a finding that Christian had accepted responsibility for his offenses.

serious sentence." Accordingly, the court sentenced Christian to a total of forty-three years' incarceration with seventeen years suspended. This appeal follows.

ANALYSIS

Christian argues that the trial court "abused its discretion in imposing a sentence in excess of the sentencing guidelines where the evidence showed that [he] expressed genuine remorse and had taken responsibility for his actions." He maintains that the trial court did not fully weigh "the evidence in mitigation of [his] culpability and favor a reduced, rather than an enhanced, sentence." Finally, he concludes that the court's decision to impose a sentence "well above the mid-range of the sentencing guidelines" despite reducing that sentence by "about four years" indicates "that the court always intended to exceed the guidelines without regard to the evidence militating in favor of leniency." But we hold that the trial court did not err. The record reflects that the court considered all the relevant mitigating and aggravating factors before permissibly sentencing Christian within the statutory limits.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). They are "merely procedural tools to assist and guide a judge in the exercise of the judge's sentencing discretion." *Luttrell v. Commonwealth*, 42 Va. App. 461, 468 (2004). Accordingly, a judge's failure to follow the sentencing guidelines is "not [] reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Instead, "[w]e review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011) (citing *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994)).

It is well established that "when a statute prescribes a maximum imprisonment penalty[,] and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston*

*v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

"It is within [a] trial court's purview to weigh any mitigating factors presented by [a] defendant." *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Here, the trial court did not abuse its discretion. It advised Christian that if he received a maximum sentence for each offense, he could face up to sixty-three years in prison. *See* Code §§ 18.2-10, 18.2-32, 18.2-53.1, 18.2-154. The record demonstrates that the trial court considered the mitigating circumstances Christian cites on appeal and, after finding that he "accepted responsibility," reduced the sentence it intended to impose by four years. Balanced against those circumstances, however, were the aggravating circumstances of the violence and dangerousness of Christian's offenses and the life-altering impact they had on Turner's surviving family. Indeed, in explaining its upward departure from the guidelines' recommendation, the trial court wrote: "Horrific case—[Christian] shot victim in front of 3 children,—open parking lot with many bystanders—significant danger to public. I have actually reduced my sentence by 4 [years] because of [Christian's] acceptance of responsibility." Thus, the record demonstrates that the trial court carefully weighed and balanced the evidence and imposed the sentence it deemed appropriate. That sentence was "within the statutory range[s], and our task is complete." *Thomason*, 69 Va. App. at 99.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*