COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Athey, Callins and Frucci

TYLER O'NEAL DOLSEY

                                          MEMORANDUM OPINION[*]

v.      Record No. 0115-24-3                          PER CURIAM
                                          NOVEMBER 19, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge[1]

(Jim D. Childress III; Childress Law Firm, PC, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Linda R. Scott, Senior
Assistant Attorney General, on brief), for appellee.


On January 4, 2023, Tyler O'Neal Dolsey ("Dolsey") pleaded guilty in the Circuit Court

of the City of Lynchburg ("trial court") to two counts of felony destruction of property. Pursuant

to the terms of a written plea agreement nolle prosequing two additional felony counts, Dolsey

was convicted and subsequently sentenced to four years of incarceration with two years and

sixteen months of his sentence suspended. On appeal, Dolsey contends that he was both

"misinformed" and "misunderstood the terms" of the plea agreement and assigns error to the trial

court for denying his subsequent motion to withdraw his guilty pleas. Finding no error, we

affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Yeatts entered the final order in this case. Judge J. Frederick Watson presided over a July 6, 2022 hearing and entered a continuance in this case.

[2] After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

## I. BACKGROUND

On May 31, 2020, both on surveillance videotape and on social media livestream, Dolsey was recorded throwing objects at a local restaurant and another nearby business multiple times while participating in a protest that devolved into a riot.[3] After reviewing the video footage to confirm Dolsey's involvement, law enforcement arrested Dolsey on June 9, 2020, and charged him with two counts of destruction of property, one count of participating in a riot, and one count of maliciously discharging a missile.

The day before his January 4, 2023 trial was scheduled to commence, Dolsey executed a plea agreement which required the Commonwealth to move to nolle prosequi the indictments charging him with participating in a riot and maliciously discharging a missile in exchange for Dolsey pleading guilty to two counts of felony destruction of property. The plea agreement further provided that Dolsey agreed to waive his constitutional rights: 1) to proceed to trial; 2) to have the case be determined by a jury; 3) to be represented by counsel and; 4) to confront any witnesses testifying against him.[4] The plea agreement also provided that there was "no agreement as to sentenc[ing]," which left sentencing to be decided by the trial court. The plea agreement also explicitly noted that Dolsey "accepted responsibility" for his actions and that his acceptance of responsibility would be taken into consideration in determining his final sentence.

The following day, the trial court conducted a hearing to determine whether to accept Dolsey's anticipated guilty pleas pursuant to the terms of the plea agreement. First, Dolsey entered pleas of guilty to both counts of felony destruction of property, whereupon the trial court

---

[3] This videotape also showed Dolsey smashing panes of glass at the nearby business and handing rocks to other rioters to throw.

[4] The plea agreement also stated that Dolsey "underst[oo]d that by pleading guilty [he] *may [have] waive[d]* [his] right to an appeal." (Emphasis added). But as the Commonwealth does not assert that the plea agreement indeed waived Dolsey's right to appeal, we address the merits of his claims.

conducted a plea colloquy with Dolsey to determine whether to accept his guilty pleas. Next, the trial court advised Dolsey of the elements the Commonwealth would have had to prove beyond a reasonable doubt in order to convict him of the felony destruction of property offenses. Dolsey responded that he understood the elements of the offenses as well as the consequences of pleading guilty. The trial court then reviewed the rights Dolsey agreed to waive as a consequence of entering into the plea agreement. In response, Dolsey informed the trial court that he understood his rights and the consequences of his waiver of those rights in the plea agreement. The trial court then asked Dolsey whether he had reviewed the plea agreement with his attorney and whether he was asking the court to accept the terms of the plea agreement. Dolsey's response was "Yes, sir."

Next, the trial court reviewed the plea agreement's provisions with respect to sentencing, explicitly asking if Dolsey understood that the plea agreement provided that he was to pay restitution not to exceed $13,275.42, but that there was otherwise no agreement as to his final sentence. Dolsey affirmed that he understood. The trial court next informed Dolsey that "the [c]ourt's [going to] order sentencing guidelines, [and] set this matter for a separate sentencing event" in which the trial court could "exceed the guidelines so long as the [c]ourt does not exceed the maximum penalty provided by law for these offenses." Dolsey informed the trial court once again that he understood. The trial court further explained to Dolsey that as a result of the court accepting his pleas pursuant to the terms of the plea agreement "the Commonwealth [would move] to drop counts one and four" against him. And Dolsey again responded that he understood and agreed to that result. Dolsey then confirmed that he was satisfied with his attorney's services and that he had no questions for the trial court. Based on the colloquy, the trial court found that Dolsey made his guilty pleas freely, intelligently, and voluntarily, and

further found that he "underst[oo]d the nature of the charges [against him] and the consequences of [his] pleas."

The Commonwealth then proffered its evidence to the trial court in support of the charges against Dolsey, including the video surveillance and social media recordings. After accepting the Commonwealth's proffer and based upon its evidence and the plea agreement, the trial court found Dolsey guilty of two counts of destruction of property and informed him that he would be sentenced at a later date.

On March 21, 2023, Dolsey's original counsel who represented him during the previous hearing filed a motion to withdraw as counsel for Dolsey, which was granted by the trial court. Newly appointed counsel for Dolsey then filed a motion to withdraw his guilty pleas on May 23, 2023, on the grounds that he did not fully view or understand the evidence presented against him. However, on June 7, 2023, Dolsey's second appointed attorney also withdrew as counsel, resulting in a third attorney having to be appointed to represent Dolsey.

After the trial court continued the case in light of a third attorney's appointment to his defense, the trial court heard Dolsey's motion to withdraw his guilty pleas on December 20, 2023. During this hearing on Dolsey's motion to withdraw his previous guilty pleas, Dolsey testified in support of his motion stating that he "didn't have much . . . [of an] opportunity to view much of anything" related to the Commonwealth's evidence and that he believed that his first attorney only told him that he would be liable to pay restitution as a result of the plea agreement and that the agreement excluded him from being incarcerated. He also testified that he had made an honest mistake in accepting the plea agreement as the meaning of the terms in the agreement were not apparent to him at the time he read it.[5] However, Dolsey declined to

_____

[5] Dolsey also testified that he thought he had a "good defense" against the charges in question at the time he sought to withdraw the plea. However, as this argument has not been raised on appeal, we do not consider it.

describe which terms of the plea agreement he found unclear, nor did he provide a basis for what he found misleading about the agreement.

During cross-examination, Dolsey admitted that at the plea hearing he viewed video evidence pertaining to his underlying conduct. And in considering the plea agreement, he acknowledged 1) having a phone call discussing the offer with his first attorney[6]; 2) being given six months to consider the offer due to a continuance; 3) seeing the written agreement before he appeared in court; and 4) reviewing the plea agreement with his attorney in person before he agreed to execute it. Dolsey also conceded that he signed the plea agreement and notice of plea agreement forms, which explicitly stated that he was satisfied with his attorney's representation, that there was no agreement to any sentence, and that he was entering his pleas because he was guilty of his crime. The Commonwealth also presented evidence that it had relied on the plea agreement in moving to nolle prosequi two additional charges against Dolsey. And the Commonwealth proffered evidence that witnesses to the events in question had left the state after the plea agreement had been accepted, prejudicing the Commonwealth's ability to try Dolsey if the trial court permitted the pleas to be withdrawn.

The trial court denied Dolsey's motion to withdraw his pleas, reasoning that "[g]uilty pleas are governed by contract principles like any other contract" and from the trial court's review of the record "simply put, [Dolsey] got the benefit of the bargain." Further dismissing Dolsey's assertion that he was mistaken as to the terms of the agreement, the trial court noted "[a] change of heart in what you're doing is not a basis for the [c]ourt setting aside [your plea agreement]." Then, on December 21, 2023, the trial court entered an order consistent with its findings at the hearing and denied Dolsey's motion. Following a sentencing hearing, by final

---

[6] It is unclear from the record what date the Commonwealth made its plea agreement offer to Dolsey.

order entered on the same day, the trial court sentenced Dolsey to a total of 4 years' imprisonment with 2 years and 16 months suspended.[7]  Dolsey appealed.

## II. ANALYSIS

A. *Standard of Review*

We review the trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion.  *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021), *aff'd*, 302 Va. 171 (2023).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Ramsey v. Commonwealth*, 65 Va. App. 593, 599 (2015)).  "Accordingly, [under this standard] we may reverse a trial court's denial of the motion 'only upon "clear evidence that [the decision] was not judicially sound[.]"'"  *Id.* (second and third alterations in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

B. *The trial court did not abuse its discretion in denying Dolsey's motion to withdraw his guilty pleas.*

Dolsey contends that the trial court erred in denying his motion to withdraw his pleas because his understanding of what his plea agreement contained, as shown through his testimony, was underlaid by an "honest mistake of fact."  We disagree.

"Under Virginia law, motions to withdraw a guilty plea are governed by two separate standards.  The timing of the motion to withdraw determines which standard a court will apply to review the motion."  *Brown v. Commonwealth*, 297 Va. 295, 299 (2019).  And in reviewing the agreement, we "must also consider contract principles and the agreement" between the defendant and the Commonwealth.  *Thomason v. Commonwealth*, 69 Va. App. 89, 95 (2018).

A motion made before sentence is imposed "should be granted" if the defendant establishes:

---

[7] The final order also required Dolsey to pay $13,275.42 in restitution.

- 6 -

(1) "the plea of guilty was submitted in good faith under an honest mistake of material fact or facts, or . . . it was induced by fraud, coercion or undue influence and would not otherwise have been made"; (2) "the evidence supporting the motion shows that there is a reasonable defense . . ." to the charge; (3) granting the motion will not unduly prejudice the Commonwealth; and (4) the motion to withdraw the plea was not filed "merely to cause undue delay in the administration of justice or [otherwise represents] bad faith or misconduct by or on behalf of the defendant."

*DeLuca*, 73 Va. App. at 579 (first and third alterations in original) (citation omitted) (first quoting *Parris v. Commonwealth*, 189 Va. 321, 324 (1949); then quoting *Justus v. Commonwealth*, 274 Va. 143, 154 (2007); and then quoting *Hubbard v. Commonwealth*, 60 Va. App. 200, 211 n.4 (2012)). "It is not enough for a defendant to merely assert these things, but rather, the assertions must be 'sustained by proofs[.]'" *Id.* (alteration in original) (quoting *Justus*, 274 Va. at 153).

Moreover, "[t]he good faith requirement 'protects the integrity of the judicial process by precluding defendants from using a guilty plea as a subterfuge to manipulate the court[.]'" *Branch v. Commonwealth*, 60 Va. App. 540, 546-47 (2012) (quoting *Hubbard*, 60 Va. App. at 208). Further, if a defendant seeks to withdraw a plea on the grounds of mistake, they must show that the guilty plea "was entered by mistake or under a misconception of the nature of the charge; through a misunderstanding as to its effect; [or] through fear, fraud, or official misrepresentation[.]" *Id.* at 548 (quoting *Parris*, 189 Va. at 325). And "[w]e have [also] stated that prejudice sufficient to prevent withdrawal of a guilty plea 'may exist where the record reflects that the Commonwealth has partially or fully fulfilled its obligations in a plea agreement by dismissing or amending charges . . . .'" *Thomason*, 69 Va. App. at 97 (quoting *Hubbard*, 60 Va. App. at 211 n.4).

Here, the trial court did not abuse its discretion in denying Dolsey's motion to withdraw his guilty pleas. At the January 4, 2023 plea hearing, the trial court's detailed colloquy

demonstrates that Dolsey was well aware of the consequences of his plea agreement and that he had no questions pertaining to its terms at that time. In addition, the central concern expressed during the colloquy was the agreement's effect on Dolsey's sentencing which was to be determined at a future sentencing hearing with a cap on restitution. Yet months later, after the appointment of Dolsey's second attorney, he attempted to withdraw this guilty plea on what appears to be vague and threadbare grounds, which included his failure to proffer *what he did not* understand about the plea agreement and why he did not understand it. In fact, the record reflects that Dolsey testified repeatedly that his actions underpinning the charges were "a mistake," but now he expects this Court to accept that he was in fact mistaken regarding his plea agreement as a result of one discussion with his first attorney. Weighed against Dolsey's assertion are his several admissions during the colloquy that he reviewed the plea agreement and discussed its terms on several occasions with his then attorney. Additionally, the terms he now claims to be misled by were discussed extensively with him by the trial court. Hence, the record contains ample evidence reflecting that the trial court was justified in interpreting his motion to be merely grounded in "[a] change of heart" instead of good faith and thus the trial court was justified in denying the motion to withdraw his guilty plea on that ground alone.

Finally, Dolsey's "honest mistake" argument is also unavailing. Dolsey now asserts for the first time that he was "mistake[n]" about the consequences of his sentence, positing that because his first attorney had "contacted [him] randomly one day informing [him] that the Commonwealth would agree to only restitution, . . . [with] no jail time" that he was reasonably mistaken about that particular condition of the plea agreement. But "[t]he burden of proof is . . . on the party alleging mistake to prove its existence." *Norfolk v. Bennett*, 205 Va. 877, 880 (1965). Dolsey fails to meet his burden in the context of this case. Dolsey repeatedly admitted during the colloquy that he had reviewed the plea agreement and discussed its terms with his first

attorney on several occasions.  He also specifically discussed the same provision with the trial court.  Thus, we cannot find here that the trial court abused its discretion in disregarding Dolsey's honest mistake argument during the hearing on his motion to withdraw his plea.

Moreover, even assuming that Dolsey's argument was made in good faith and that the evidence supported his position that he made an honest mistake, if Dolsey were permitted to withdraw his plea, the Commonwealth would be unduly prejudiced.  The record on appeal reflects that the Commonwealth nolle prossed two felony charges against Dolsey pursuant to the plea agreement and that the witnesses to the events in question had subsequently become unavailable.  As "the record reflects that the Commonwealth has partially or fully fulfilled its obligations in a plea agreement by dismissing or amending charges," *Thomason*, 69 Va. App. at 97, we further find that permitting Dolsey to withdraw his plea would be sufficiently prejudicial to support denying his motion.

### III. CONCLUSION

For the foregoing reasons, we find no error.  Thus, the judgment of the trial court is affirmed.

*Affirmed*.